Linda G. SCHAFER, in her Official Capacity of Clerk–Treasurer of the Town of Sellersburg, Indiana, Appellant–Plaintiff,

v.

SELLERSBURG TOWN COUNCIL, Sellersburg, Indiana, Appellee–Defendant.

No. 10A01–9804–CV–149.

Court of Appeals of Indiana.

June 29, 1999.

Lonnie T. Cooper, Jeffersonville, Indiana, Attorney for Appellant.

William P. McCall III, Jeffersonville, Indiana, Attorney for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

On August 28, 1995, the Town of Sellersburg, by and through its town council, (collectively "the Town"), entered into a three-year contract with Environmental Management Corporation ("EMC") to manage the daily operations of the Town's wastewater treatment facility and water utility. Under the contract, EMC is responsible for billing customers and collecting fees on behalf of the Town for sewer, water and trash pick-up services.

On April 8, 1997, Schafer filed a verified complaint against the Town and EMC pursuant to Indiana Code Section 36–4–4–5. In particular, Schafer alleged that the Town's contract with EMC usurps her statutory duty as clerk-treasurer to "receive and care for" Town funds under Indiana Code Section 36–5–6–6 and requested judicial resolution of the dispute. Both the Town and EMC filed motions to dismiss. The trial court granted EMC's motion and denied the Town's motion.

On July 23, 1997, Schafer filed a petition for declaratory judgment and mandatory injunction, in which she requested judicial resolution of the controversy regarding her statutory duties as clerk-treasurer and an order from the court requiring the Town to approve properly presented claims for legal services.[1] Following a bench trial, the trial court ordered the parties to prepare and file written memoranda of law. The parties also presented oral arguments to the court. After taking the matter under advisement, the court denied Schafer's petition for declaratory judgment and mandatory injunction and

---

1. *See* IND.CODE § 36–5–6–8 (clerk-treasurer may hire attorney on terms the clerk-treasurer considers appropriate; appropriations for the salaries of attorneys shall be approved in the annual budget).

entered judgment in favor of the Town. This appeal ensued.

We affirm.[2]

## ISSUES

We address one issue *sua sponte*, and the parties present one issue for review:

1. Whether the Clark Circuit Court properly exercised subject matter jurisdiction of this case.

2. Whether Indiana Code Section 36–5–6–6 designates the following duties to the clerk-treasurer:

(A) to bill and collect fees directly from customers who receive services from a municipally owned utility; and

(B) to keep individual customer accounts for fees paid to the municipally owned utility.

## FACTS

Linda Schafer is the duly elected clerk-treasurer of the incorporated Town of Sellersburg.[3] Her statutory duties as clerk-treasurer include: (1) to receive and care for all money and to pay the money out only on order of the Town's legislative body; (2) to keep accounts showing when and from what sources the clerk-treasurer has received Town money and when and to whom the clerk-treasurer has paid out money.[4] Schafer also serves as the Town's fiscal officer.[5]

The Town's wastewater and sewer treatment plant is a municipally owned utility, and the Town Council serves as the municipal works board.[6] On April 24, 1995, the Town entered into a three-month interim contract with EMC to operate the Town's wastewater treatment facility, water utility and trash

pick-up. On April 27, 1995, the Town adopted Ordinance No. 95–618, which removed the clerk-treasurer as utilities clerk. Four months later, the Town entered into a three-year contract with EMC.[7] Pursuant to the contract, EMC is responsible for billing and collecting fees from the Town's customers, a task which in the past had been performed by the clerk-treasurer and her four deputies. All funds received by EMC are entered into a computer system which records and logs payment entries. EMC deposits the funds it receives each day into a Town bank account.[8] With each deposit, EMC receives two gross deposit receipts, one is maintained by EMC and the other is given to the clerk-treasurer.

After EMC assumed responsibility for the billing and collection of utility customer accounts, the clerk-treasurer's staff was reduced from four to one deputy clerk-treasurer. As clerk-treasurer, Schafer is required to file with the State Board of Accounts a form referred to as a Clerk–Treasurer Annual Report ("CTAR–1"), which is a verified financial report filed annually on behalf of the Town. In that report, the clerk-treasurer must certify the accuracy of EMC's data regarding the receipt of water and sewer utility payments to the Town. According to Schafer, she is unable to certify the accuracy of EMC's data by reviewing the daily gross deposit receipts provided by EMC.

The Town receives revenue from other sources that the clerk-treasurer does not directly bill and collect. For instance, the clerk-treasurer does not directly bill and collect revenue from property taxes, gasoline taxes or cigarette taxes. Nor does she directly bill and collect fees assessed and

2. We heard oral argument in this case on May 3, 1999, at Floyd Central High School in Floyds Knobs.

3. "Town" refers to an incorporated town. IND. CODE § 36–1–2–21. Indiana Code Section 36–1–2–11 defines "municipality" as "city or town." Thus, Sellersburg is both an incorporated town and a municipality.

4. *See* IND.CODE § 36–5–6–6(a)(1)–(2).

5. *See* IND CODE § 36–1–2–7(4) ("fiscal officer" means clerk-treasurer for a town).

6. *See* IND.CODE § 8–1.5–3–3(2) ( the legislative body of a municipality may, by ordinance, provide for the control of any or all of its municipally owned utilities by a board consisting of the members of the municipal legislative body).

7. At oral argument, the parties confirmed that the Town has renewed its contract with EMC.

8. EMC can only deposit funds into the Town's bank account; EMC has no ability to withdraw Town revenue or to manage or invest Town funds.

charged by the Sellersburg Police Department or the Sellersburg swimming pool. In these instances, the fees are billed and collected by someone other than the clerk-treasurer, who in turn remits the revenue to the clerk-treasurer after payment has been made. The clerk-treasurer then receives and cares for the revenue as Town money.

## DISCUSSION AND DECISION

### Issue One: Subject Matter Jurisdiction

We first address *sua sponte* the issue of subject matter jurisdiction. There are three jurisdictional elements in every action: jurisdiction of the subject matter; jurisdiction of the person; and jurisdiction of the particular case. *State ex rel. Pub. Serv. Comm. v. Johnson Circuit Court*, 232 Ind. 501, 508–09, 112 N.E.2d 429, 432 (1953). Unlike jurisdiction of the particular case, subject matter jurisdiction cannot be imposed by mutual consent or waived. *Decatur County Rural Elec. Membership Corp. v. Public Serv., Co.*, 150 Ind.App. 193, 197, 275 N.E.2d 857, 860 (1971). If the parties do not raise the issue of subject matter jurisdiction, it is our duty to raise and determine it. *Id.*

In this case, Schafer filed her complaint in the Clark Circuit Court and requested that the circuit court transfer the cause to the Clark Superior Court to be heard en banc pursuant to Indiana Code Section 36-4-4-5(a), which provides:

> If uncertainty exists or a dispute arises concerning the executive or legislative nature of a power or duty exercised or proposed to be exercised by a branch, officer, department, or agency of the government of a municipality, a petition may be filed in the circuit court of the county in which the municipality is located by the municipal executive, another municipal elected official, the president of the municipal legislative body, or any person who alleges and establishes to the satisfaction of the court that he is or would be adversely affected by the exercise of the power; *however, in a county having a superior court that has three (3) or more judges, the petition shall be filed in the superior court and shall be heard and determined by the court sitting en banc.*

(emphasis added). After a conference in chambers, the trial court made a written entry that jurisdiction lies with the Clark Circuit Court, not the superior courts. We agree.

Although the parties did not raise the issue of jurisdiction on appeal, we address the jurisdictional aspect of this case because it requires that we examine for the first time the meaning of the words "a superior court" as used in Indiana Code Section 36-4-4-5(a). When a statute is clear and unambiguous on its face, we may not interpret the statute. *Thompson v. Ferdinand Sesquicentennial Com., Inc.*, 637 N.E.2d 178, 180 (Ind.Ct.App.1994). Rather, words are to be given their plain, ordinary and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* Additionally, language employed in a statute is deemed to have been used intentionally. *Burks v. Bolerjack*, 427 N.E.2d 887, 890 (Ind.1981).

The statute which established the superior courts in Clark County states in relevant part, that "[t]here are established *three (3) superior courts* in and for the county of Clark, Indiana, each of which shall consist of one (1) judge. . . ." IND.CODE § 33-5-10-1.5 (emphasis added). This statute is distinguishable from that which established the superior court in Vanderburgh County, which provides: "There shall be and is hereby established *a superior court* in Vanderburgh County, Indiana, which court shall consist of seven (7) judges. . . ." IND.CODE § 33-5-43-1 (emphasis added). Similarly, Indiana Code Section 33-5-29.5-1, which established the Lake County Superior Court, states that "[t]here shall be and is hereby established *a superior court* in Lake County, Indiana." (emphasis added).

The unambiguous phrase "a superior court" used in Indiana Code Section 36-4-4-5(a) is identical to the language used to establish "a superior court" in both Vanderburgh and Lake Counties. We conclude that a person who files a petition under Indiana Code Section 36-4-4-5 must do so in the circuit court unless he lives in a county having "a superior court" as established by stat-

ute. Because Clark County has three separate superior courts, rather than *a* superior court, the Clark Circuit Court properly exercised subject matter jurisdiction of Schafer's petition.

### Issue Two: Statutory Duties of Clerk Treasurer

Schafer does not challenge the Town's authority to contract with EMC.[9] Instead, she challenges that part of the Town's contract with EMC which allegedly requires EMC to perform duties that have been expressly delegated to the clerk-treasurer.[10] In particular, she argues that EMC: (1) receives and cares for Town funds, and (2) keeps accounts showing when and from what source the Town revenue is derived, both of which duties are assigned to the clerk-treasurer under Indiana Code Section 36–5–6–6. She also maintains that EMC's contractual obligation to provide her with a daily gross deposit receipt of the funds received and deposited into the Town bank account prevents her from performing her statutory duties.

In response, the Town asserts that EMC performs the "billing and collection" of the wastewater and water utility revenue and that it does not "receive and care for" Town money. The Town also maintains that it is within the Town's discretion whether to assign responsibility for billing and collection of utility fees to the clerk-treasurer.[11] We address these arguments in turn.

The interpretation of a statute is a question of law which is reserved for the courts. *Moduform, Inc. v. Harry H. Verkler Contractor, Inc.*, 681 N.E.2d 243, 248 (Ind.Ct. App.1997), *trans. denied.* When the meaning of a statute is at issue, we follow several rules of statutory construction. *See* IND. CODE § 1–1–4–1(1). It is well established that when a statute is clear and unambiguous on its face, it is not subject to judicial interpretation. *Town of Merrillville v. Merrillville Conservancy Dist.*, 649 N.E.2d 645, 649 (Ind.Ct.App.1995), *trans. denied.* Instead, words are to be given their plain and ordinary meaning. *Id.* Courts may consult English language dictionaries to ascertain the

9. The Town's authority to enter into the contract with EMC is established by Indiana Code Section 36–9–23–6, which provides in relevant part:

> (a) *The [municipal works] board may enter into all contracts or agreements necessary or incidental to the performance of its duties and the execution of its powers under this chapter.* However, the board may not obligate itself or the municipality beyond the extent to which money has been or may be provided under this chapter.
> * * * * *
> (d) *The board* or any public utility (as defined in IC 8–1–6–3) contracting with the board for the treatment, purification, or disposal in a sanitary manner of liquid and solid waste, sewage, night soil, or industrial waste *may contract with a water utility furnishing water service* to users or property served in the municipality or by the public utility *to do the following:*
> (1) Ascertain the amount of water consumed.
> (2) Compute the amount of the charge to be billed for sewer services to each user or property served.
> (3) Bill and collect the amounts due for sewer services.
> (4) Discontinue water service to delinquent sewer users.
> (emphases added).

10. The contract provision at issue states: "Billing of Sewer Fees, Water Service, and Trash Pick-up. EMC will provide the additional service on behalf of the Town of billing for sewer, water service, and trash pick-up. EMC will read meters, mail bills to customers, collect amounts billed, and report receipts on a daily basis to the clerk-treasurer's office. EMC's monthly reporting cycle will include data on billing and collection efforts."

11. The Town does not address Schafer's argument that the contract between it and EMC also requires EMC to perform the duty set out under Indiana Code Section 36–5–6–6(a)(2) because in her verified complaint, Schafer's sole allegation was that the Town's contract with EMC has usurped her duty to "receive and care for" Town funds under Indiana Code Section 36–5–6–6(a)(1). Schafer, however, presented her argument under Indiana Code Section 36–5–6–6(a)(2) in both her memorandum of law and during argument before the trial court. Thus, Schafer presented both claims to the court for consideration. Additionally, according to the certificate of service contained in Schafer's memorandum of law, Schafer provided counsel for the Town with a copy of her memorandum of law prior to that argument. Given the rules of notice pleading, we address Schafer's claims in full. *See Bastin v. First Indiana Bank*, 694 N.E.2d 740, 744 (Ind.Ct.App.1998) (a complaint's allegations are sufficient if they put the opposing party on notice as to why the plaintiff sues), *trans. denied.*

plain and ordinary meaning of a statutory term. *Moduform*, 681 N.E.2d at 248. When the legislature enacts a statute, we presume it is aware of existing statutes in the same area. *Merrillville*, 649 N.E.2d at 649. Moreover, statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious result. *Bonnell v. Sabbagh*, 670 N.E.2d 69, 71 (Ind.Ct.App.1996).

### A. Duty to Receive and Care for Town Funds

 Under its contract with the Town, EMC is responsible for billing and collection of utility fees from the Town's customers. Before the contract was executed, the clerk-treasurer performed that function. Schafer argues that her statutory duties to "receive and care for" Town funds must also include the duty to bill and collect the Town's utility fees directly. We disagree.

Indiana Code Section 36–5–6–6(a)(1) provides that the clerk-treasurer shall "[r]eceive and care for all town money and pay the money out only on order of the town legislative body." It is undisputed that the terms "bill and collect" do not appear within the text of the statute at issue. As a result, we look to the plain meaning of the language used to determine whether the legislature intended "billing and collection" of the Town's utility fees to be a duty expressly and exclusively assigned to the clerk-treasurer.

 The plain meaning of "receive" is "to take or acquire; get." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1508 (3d ed.1992). "Care for" means "upkeep; maintenance" or "to provide needed assistance or watchful supervision." *Id.* at 289–90. On the other hand, "bill" means "to present a statement of costs or charges to." *Id.* at 186. Additionally, "collect" is defined as "to call for and obtain payment of." *Id.* at 372. Thus, "receive" and "care for" have broader meanings, while "bill" and "collect" refer more specifically to the collection of fees for services provided. One rule of statutory construction is that it is just as important to recognize what the statute does not say as it is to recognize what it does say. *See Clifft v. Indiana Dep't of State Revenue*,

660 N.E.2d 310, 316 (Ind.1995). Had the legislature intended that the clerk-treasurer have the specific duty to bill and collect utility fees, we presume it would have utilized more specific language referring to such a duty instead of drafting the statute in more general terms. *See Burks*, 427 N.E.2d at 890 (language employed in a statute is deemed to have been used intentionally).

Moreover, Indiana Code Section 36–5–6–7, which appears in the same chapter and was enacted by our legislature at the same time as Indiana Code Section 36–5–6–6, states in relevant part:

> (b) *If a town owns a utility and the clerk-treasurer is directly responsible for the billing and collection of that utility's rates and charges*, the clerk-treasurer shall appoint those employees who are also responsible for that billing and collection. These employees serve at the clerk-treasurer's pleasure.

(emphasis added). The language here indicates that the clerk-treasurer is not necessarily directly responsible for the billing and collection of utility fees. Rather, it states that *if* a town owns a utility *and* the clerk-treasurer is directly responsible for the billing and collection of that utility's fees, then the clerk-treasurer is authorized to appoint employees to assist her with that billing and collection function. The logical corollary is that if the town owns a utility and the clerk-treasurer is *not* responsible for the billing and collection, no employees need be appointed for that purpose. When Indiana Code Section 36–5–6–6(a)(1) and Indiana Code Section 36–5–6–7 are construed together to produce a harmonious result, it is clear that Schafer's contention must fail. We conclude that Indiana Code Section 36–5–6–6(a)(1) does not require that the clerk-treasurer bill and collect the Town's utility fees directly. Thus, the Town's contract with EMC does not usurp the clerk-treasurer's duty to "receive and care for" Town funds.

### B. Duty to Keep Accounts

 Schafer also claims that pursuant to its contract with the Town, EMC keeps accounts showing when and from what sources Town revenue is derived, a duty assigned to

the clerk-treasurer under Indiana Code Section 36–5–6–6(a)(2). Additionally, she argues that the gross deposit receipt EMC provides to the clerk-treasurer each day prevents her from performing her duty under this section.

Indiana Code Section 36–5–6–6(a)(2) provides that the clerk-treasurer shall "[k]eep accounts showing when and from what sources the clerk-treasurer has received town money and when and to whom the clerk-treasurer has paid out town money." Like the clerk-treasurer's duty to "receive and care for" Town funds, the legislature drafted Indiana Code Section 36–5–6–6(a)(2) in general terms. There is no express language which requires the clerk-treasurer to keep an account for each individual utility customer. Accordingly, Schafer asks that we interpret Indiana Code Section 36–5–6–6(a)(2) to mean that the legislature intended the clerk-treasurer to be responsible for keeping individual customer accounts.

■■■ As we have already discussed, Indiana Code Section 36–5–6–7(b) evinces the legislative intent that the clerk-treasurer is not necessarily responsible for the direct billing and collection of the Town's utility fees. It follows that the clerk-treasurer need not maintain an individual account of the money paid to the Town by each of the Town's utility customers. For the purposes of interpreting a statute, we presume that the legislature would not intend an unreasonable or absurd result. *Chesnut v. Roof,* 665 N.E.2d 7, 10 (Ind.Ct.App.1996). To require the clerk-treasurer to maintain individual accounts for each utility customer but not require her to be directly responsible for the billing and collection of the customer fees would not make sense.

Schafer also directs us to Indiana Code Section 8–1.5–3–11, which provides in relevant part: "The money belonging to each municipally owned utility shall be kept by the municipal fiscal officer [clerk-treasurer] as separate funds as required by any bond ordinance or accounting procedures established by the commission or the state board of accounts." Contrary to Schafer's contention,

this statute does not require the clerk-treasurer to maintain an individual account for each utility customer. Rather, it only requires that the money received by the Town for its municipally owned utility services be kept "as separate funds," that is, that this revenue not be commingled with income from other sources.

■■■ It is well established that statutes must be read as a whole. *Hoosier Environmental Council v. Dep't of Natural Resources,* 673 N.E.2d 811, 815 (Ind.Ct.App. 1996), *trans. denied.* In addition, statutory language must be read and interpreted in context. *Indianapolis Life Ins. Co. and Subsidiary v. United States,* 940 F.Supp. 1370, 1380 (S.D.Ind.1996). Indiana Code Section 8–1.5–3–11(a) goes on to state that any surplus earnings of the utility may be transferred by the municipal legislative body [12] from the *separate funds* to the *general fund.* (emphasis added). When considered in context of the statute and read as a whole, the "separate fund" required to be kept by the clerk-treasurer refers to a sum total utility fund, not a "separate fund" for each individual utility customer. Reading Indiana Code Section 36–5–6–6(a)(2) and Indiana Code Section 8–1.5–3–11 together, the clerk-treasurer is required only to keep an account of the money the Town receives from its municipally owned utility, and that account must be kept separate from the Town's general fund. Contrary to Schafer's argument, Indiana Code Section 36–5–6–6(a)(2) does not mandate the clerk-treasurer to keep individual accounts for each customer of the municipally owned utility.

Finally, Schafer complains that the gross deposit receipt she receives from EMC each day is inadequate. Specifically, she argues that she is unable to certify account information maintained by EMC to the State Board of Accounts and directs us to the 1995 State Board of Accounts Audit Report of the Town's Water Utility, in which the State Board of Accounts indicated that the current accounting method used by EMC places the

---

**12.** Before utility funds may be transferred, the municipal legislative body must have the approval of the municipal utility board. IND CODE § 8–1.5–3–11(a). In this case, the Town Council serves as the municipal utility board.

Town "at risk" because it lacks a designated person to maintain the accounting records. Although the Town's contract with EMC provides her access to the individual accounts, Schafer further complains that even with detailed billing and collection information for each utility customer, she could not possibly review the accounts for accuracy with the assistance of only one deputy-clerk.[13]

We acknowledge that the contract between the Town and EMC has substantially altered the day-to-day tasks which had been previously performed by Schafer as clerk-treasurer. These arguments, however, go beyond the scope of the issue presented on appeal. The issue before us is whether the legislature intended Schafer to perform certain specific duties as clerk-treasurer. We have found no authority which supports Schafer's contention that the legislature intended for the clerk-treasurer, and only the clerk-treasurer, to be directly responsible for the actual billing and collection of fees generated from the Town's municipally owned utility. Nor can we conclude that the clerk-treasurer is required by statute to keep an individual account for each customer. Schafer requests that this court bestow specific duties upon her as clerk-treasurer, which is a law-making function reserved for our legislature. *See Indiana Wholesale Wine and Liquor Co. v. State ex rel. Indiana Alcoholic Beverage Comm'n,* 695 N.E.2d 99, 107 (Ind.1998). Unless and until the legislature amends existing statutes or enacts a more a specific statute regarding this subject, we conclude that Indiana Code Section 36–5–6–6 does not require that the clerk-treasurer actually bill, collect and maintain individual customer accounts for the funds received from a municipally owned utility.

In sum, we conclude that the Town's contract with EMC does not usurp the duties of the clerk-treasurer under Indiana Code Section 36–5–6–6. Thus, the trial court did not err when it denied Schafer's petition for declaratory judgment and mandatory injunction and entered judgment in favor of the Town.

Affirmed.

BAKER, J., and BAILEY, J., concur.

---

13. The contract provides that all information systems and office equipment purchased and installed by EMC are property of the Town and that EMC's records are available for review by authorized Town personnel. The State Board of Accounts Audit Report of the Water Utility contains only one section concerning the contract between the Town and EMC. On appeal, neither party addresses the Board's authority to examine the records which EMC maintains for the Town. *See State Bd. of Accounts v. Indiana University Foundation,* 647 N.E.2d 342 (Ind.Ct.App.1995) (holding that not-for-profit corporation which solicits and manages funds from private sources for use or benefit of Indiana University is not subject to examination by State Board of Accounts).