Dennis MURRAY, Sr., Appellant–
Plaintiff,

v.

CONSECO, INC., Appellee–Defendant.

No. 29A02–0108–CV–552.

Court of Appeals of Indiana.

April 12, 2002.

Rehearing denied June 3, 2002.

Michael A. Wilkins, Ice Miller Donadio & Ryan, Indianapolis, IN, Attorney for Appellant.

Joseph H. Yeager, Jr., Scott D. Himsel, Shawna Meyer Eikenberry, Baker & Dan-

iels, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Dennis Murray, Sr., appeals the trial court's grant of summary judgment in favor of Conseco, Inc., in Murray's action challenging his removal from Conseco's board of directors.[1] We affirm.

### Issue

The sole restated issue that we consider today is whether the Indiana Business Corporation Law ("IBCL") authorized Conseco's board of directors, by a majority vote, to remove Murray from the board without cause, even though Murray had been elected to the board by Conseco's shareholders.

### Facts

Conseco's shareholders first elected Murray to the board of directors in 1994. He was twice re-elected to three-year terms on the board, most recently in June 2000. At the time of this election, there were 330,000,000 outstanding shares of common stock and "Series F" preferred stock that were eligible to vote for directors. 288,934,684 votes were cast in Murray's favor. On December 12, 2000, the board of directors voted to oust Murray from his directorship. Murray asserts that his removal came about because he wanted to pursue litigation, contrary to the views of management and others on the board, against certain third parties whom he claimed were responsible for Conseco's recent and well-publicized financial difficulties and decrease in the value of Conseco stock. Conseco is silent as to the reasons

for Murray's removal, but it has not attempted to label Murray's removal as being "for cause." Conseco's articles of incorporation and by-laws do not discuss the removal of directors by the board.

Murray filed a declaratory judgment action on the same day he was voted off the board, which challenged his removal from the board and sought damages resulting from Conseco's alleged "wrongful acts." Appellant's App. p. 24. Conseco filed a motion to dismiss and for summary judgment on February 7, 2001. Murray responded with a cross motion for partial summary judgment, arguing that his removal from Conseco's board violated the IBCL as a matter of law and requesting that the trial court order his reinstatement. After conducting a hearing, the trial court entered summary judgment in favor of Conseco on July 20, 2001, concluding Murray's removal was in accordance with the IBCL. Murray now appeals.

### Analysis

This case centers on the proper interpretation and application of Indiana Code Section 23–1–33–8(a) & (b), which contains arguably inconsistent language regarding who may remove directors and how they may go about doing so. This portion of the IBCL provides:

(a) Directors may be removed in any manner provided in the articles of incorporation. In addition, the shareholders or directors may remove one (1) or more directors with or without cause unless the articles of incorporation provide otherwise.

(b) If a director is elected by a voting group of shareholders, only the shareholders of that voting group

---

1. David Decatur also challenged his contemporaneous removal from Conseco's board and summary judgment also was entered against

him, but he has not participated in this appeal.

may participate in the vote to remove that director.

Murray's essential argument is that a director elected by the shareholders, like him, may only be removed by the group of shareholders that elected him or her pursuant to subsection (b), and that the board's authority to remove directors is limited only to those directors who had been appointed by the board to fill an unexpected vacancy. Conseco counters that the second sentence of subsection (a) provides the board with unlimited authority to vote directors off the board, and subsection (b) is only relevant if the removal of a director is put to a shareholder vote. We conclude that Conseco's proposed interpretation of the statute best harmonizes the tension between subsections (a) and (b) and gives effect to the legislative intent and policy behind this statute and the IBCL generally, while Murray's interpretation would eviscerate that intent and render part of the statute essentially meaningless, namely, the second sentence of subsection (a).

This case is before us after the grant of a summary judgment motion. A grant of summary judgment requires that no genuine issue of material fact exist and that the movant be entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Lake County Equal Opportunities Council v. Greer*, 735 N.E.2d 206, 208 (Ind.2000). On appeal from summary judgment, the reviewing court analyzes the issues in the same fashion as the trial court, de novo. *Greer*, 735 N.E.2d at 208. The court must also view the pleadings and designated materials in the light most favorable to the non-movant. *Id.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Hibler v. Conseco, Inc.*, 744 N.E.2d 1012, 1018 (Ind.Ct.App.2001). Once a summary judgment movant has made a prima facie showing that there is no genuine issue of

material fact, the burden falls upon the non-moving party to identify a factual dispute that would preclude summary judgment. *Abbott v. Bates,* 670 N.E.2d 916, 921 (Ind.Ct.App.1996).

 Additionally, this case turns on a question of statutory interpretation, which is a question of law reserved for the courts that is reviewed de novo. *Spears v. Brennan,* 745 N.E.2d 862, 869 (Ind.Ct.App. 2001). When a statute is clear and unambiguous on its face, we may not interpret it. *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 215 (Ind.Ct.App.1999), *trans. denied.* Rather, words are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* We engage in statutory interpretation only if the statutory language is ambiguous, or susceptible to more than one interpretation. *Foster v. Evergreen Healthcare, Inc.,* 716 N.E.2d 19, 25 (Ind.Ct.App.1999), *trans. denied.* If a statute is ambiguous, our main objective in construing that statute is to determine, effect, and implement the intent of the legislature. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d 941, 948 (Ind.2001) (quoting *Melrose v. Capitol City Motor Lodge, Inc.,* 705 N.E.2d 985, 989 (Ind.1998)). In ascertaining this intent, we "presume that the legislature did not enact a useless provision" and that "[w]here statutory provisions are in conflict, no part of a statute should be rendered meaningless but should be reconciled with the rest of the statute." *Id.* (quoting *Robinson v. Wroblewski,* 704 N.E.2d 467, 474–75 (Ind.1998)). One additional rule of statutory construction is that it is just as important to recognize what the statute does not say as it is to recognize what it does say. *Schafer,* 714 N.E.2d at 217.

Here, we will concede that Section 23–1–33–8 is ambiguous in that subsection (b) may in isolation be construed as contemplating that only shareholders are entitled to remove shareholder-elected directors. Indeed, such a construction would be consistent with the entirety of the Model Business Corporation Act ("MBCA") § 8.08 upon which Section 23–1–33–8 was based. That section of the MBCA is entitled "Removal of Directors by Shareholders" and provides in part:

(a) The shareholders may remove one or more directors with or without cause unless the articles of incorporation provide that directors may be removed only for cause.

(b) If a director is elected by a voting group of shareholders, only the shareholders of that voting group may participate in the vote to remove him.

Under Section 8.08 of the MBCA, therefore, it is plain that only shareholders may remove directors.[2] Subsection (b) clarifies that where a director was elected by a specific voting group of shareholders, only that voting group may vote for his or her removal.

Our General Assembly, in enacting the IBCL, rejected a verbatim enactment of MBCA § 8.08(a), while adopting subsection (b) with no substantive changes. In fact, subsection (a) of 23–1–33–8 bears very little resemblance to subsection (a) of MBCA § 8.08. The General Assembly made a concerted effort to point out the differences between Section 23–1–33–8(a) and MBCA § 8.08(a) by stating in the "Official Comments" to the statute that "[t]he second sentence of the BCL subsection [a], authorizing the board itself to remove directors 'with or without cause

unless the articles of incorporation provide otherwise,' is found in neither the [MBCA] nor the [predecessor to the IBCL]...." The General Assembly also made it clear that "[u]nder the BCL provision, a corporation that wishes to adopt the [MBCA] rule (or similar provisions) authorizing shareholder removal of directors, *or to limit or eliminate the board's authority to remove directors*, must do so in its articles of incorporation." (Emphasis added).

The "Official Comments" to the IBCL "may be consulted by the courts to determine the underlying reasons, purposes, and policies of [the IBCL] and may be used as a guide in its construction and application." Ind.Code § 23–1–17–5. Our supreme court has recognized the IBCL "Official Comments" as "authoritative." *Fleming v. International Pizza Supply Corp.*, 676 N.E.2d 1051, 1054 n. 5 (Ind. 1997). Those comments have plainly indicated the legislative intent behind Section 23–1–33–8(a): if a corporation is required to indicate its desire to "limit or eliminate the board's authority to remove directors" in the articles of incorporation, it logically follows that the General Assembly intended for that authority otherwise to be limitless. The plain language of subsection (a) supports that construction: "directors may remove one (1) or more directors with or without cause unless the articles of incorporation provide otherwise." Furthermore, we must recognize what the statute does *not* say as much as what it does say. To insert language in the statute to the effect that directors may remove other directors only in the relatively rare case that such director was board-appointed to fill a vacancy, caused for example by resignation or death, would be to severely circumscribe the board's authority to remove

---

2. Under Section 8.09 of the MBCA, either the corporation itself or a group of at least ten percent of the shareholders may also seek judicial removal of a director for cause. Our legislature declined to enact such a provision.

directors in a manner contravening the clear intent of the statute.[3] We also conclude that Section 23–1–33–8(a) was unmistakably intended to deviate from the prior Indiana statute and case law from other jurisdictions that disfavored board removal of directors, and the General Assembly was entitled to so deviate. *See Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 800 (Ind.2001).

▇▇▇ This brings us to the following question: of what use is subsection (b) of 23–1–33–8 if the board may remove a director at any time for any reason? It is unfortunate that the General Assembly substantially rewrote subsection (a) of MBCA § 8.08 without rewording or clarifying subsection (b) in any substantive way. We are confident that 23–1–33–8(b) can be read together and harmonized with 23–1–33–8(a) so as to make both provisions meaningful, rather than leaving one portion meaningless. To give effect to the plainly expressed legislative intent that directors have unlimited authority to remove other directors, subsection (b) must be construed as clarifying *the manner* in which shareholder-elected directors may be removed *by the shareholders*, not as establishing that *only* shareholders may remove shareholder-elected directors. If shareholders wish to remove a director, subsection (b) requires that only those members of the shareholder voting group eligible to have voted for the director in the first place may subsequently vote for his or her removal. This is consistent with the place of subsection (b) in MBCA § 8.08, in that that subsection simply places limits on which shareholders may remove which directors, whereas the exclusive right of shareholders *generally* to remove directors is established in MBCA § 8.08(a) (but *not* in Indiana Code Section 23–1–33–8(a)). In sum, the plain language of the statute, and the accompanying "Official Comments," lead us to hold that, unless the articles of incorporation state otherwise, the directors of corporations chartered in Indiana possess unlimited authority to remove a fellow director, without regard to how that director was elected to the board or why the other directors seek his or her removal. Shareholders of Indiana corporations also have the authority to remove directors, subject in part to the exception in Section 23–1–33–8(b) that shareholders can only remove those directors for whom they originally were eligible to vote and the prohibition against one distinct voting group of shareholders ousting another voting group's elected director, if such voting groups exist.

It would be pointless to deny that Indiana's statutory provision allowing directors to remove other directors with or without cause has the potential to frustrate or delay the ability of a controlling group of shareholders to direct the management of a corporation and place those directors on the board whom they wish to place there, and that such a rule conflicts with the law and public policy in a number of other jurisdictions, including Delaware.[4]

---

3. As Conseco has pointed out, two states, Minnesota and North Dakota, have expressly conditioned a board's authority to remove a director upon that director's having been appointed by the board. *See* Minn.Stat. § 302A.223(2); N.D. Cent.Code § 10–19.1–41(2). Our General Assembly could have easily written Section 23–1–33–8(a) in a similar manner if it had so desired, but it did not.

4. Delaware public policy was forcefully stated by the United States District Court seated there as follows:

> To allow the Board to remove one of its own members at any time without cause would seem to be completely violative of shareholder rights. It would be absurd to require an annual meeting of shareholders to elect directors and then allow the re-

In fact, we have reviewed the corporate law statutes of all our sister states and have found no provision concerning the removal of directors by the board that is worded similarly to and as broadly as our state's provision.[5]

Nevertheless, our construction of Section 23–1–33–8 not only renders the statute internally consistent, but also consistent with evident policy choices behind the IBCL as a whole. Specifically, it has been recognized that Indiana was one of a number of states that, in the mid 1980s, revised its corporate law statutes at least partially in response to constituent concern over hostile foreign takeovers of domestic corporations and the perceived detrimental effect such takeovers might have on local communities and economies. *See* Eric W. Orts, *Beyond Shareholders: Interpreting Corporate Constituency Statutes*, 61 Geo. Wash. L.Rev. 14, 24–25 (1992). The IBCL contains a number of so-called antitakeover provisions that effectively operate to increase the power of the board of directors, arguably at the expense of shareholder power. The Control Shares Acquisition Statute, for example, prevents an ·entity that acquires a controlling block of stock in a corporation (defined as twenty, thirty-three and one-third, or fifty percent of the corporation's voting shares) from acquiring full voting rights (and necessarily the ability to change the board's incumbent membership), unless such rights are approved of by a majority of the other shareholders. *See* Ind.Code §§ 23–1–42–1–11.

Additionally, the "corporate constituency" clause contained in Indiana Code Section 23–1–35–1(d), (f), and (g) allows directors to consider not only maximizing shareholder profit when making corporate decisions, including decisions related to attempts to change control of the corporation, but also such concerns as the short and long term effect of corporate action on employees, suppliers, customers, and the communities in which offices or other facilities of the corporation are located. Closely related to these subsections, Indiana Code Section 23–1–35–1(e)(2) provides that a director is not liable to shareholders for any breach of his or her duties as a director unless the director acted or failed to act willfully or recklessly. The MBCA and jurisdictions that have adopted the MBCA verbatim essentially impose a lower quasi-negligence threshold for director liability. *See* MBCA § 8.30; Paul F. Banta, Note, *The New Indiana Business Corporation Law: "Reckless" Statute or New Standard?*, 1987 Colum. Bus. L.Rev. 233, 234–35 (1987). All in all, Section 23–1–35–1 grants incumbent directors broad authority in running the affairs of a corporation, including decisions related to hostile takeovers, and permits them to consider many

---

maining members of a staggered Board to remove the newly elected directors without cause and replace them, in total frustration of the stockholders' voting rights.
*Dillon v. Berg*, 326 F.Supp. 1214, 1225 (D.Del.1971), *aff'd*, 453 F.2d 876 (3rd Cir. 1971).

**5.** A few states, such as Massachusetts, allow board removal of directors for limited cause-based reasons. *See* Mass. Gen. Laws ch. 156B § 51(c). As mentioned, Minnesota and North Dakota give the board authority to remove directors that had been appointed by the board, but not those elected by shareholders. *See* Minn.Stat. § 302A.223(2); N.D. Cent.Code § 10–19.1–41(2). New York and Rhode Island do not allow board removal of directors as a default rule, but expressly permit a corporation's articles of incorporation to provide for such removal, subject to certain exceptions. *See* N.Y. Bus. Corp. Law § 706; R.I. Gen. Laws § 7-1.1-36.1. The vast majority of states (thirty-nine by our count) make no allowance for board removal of directors, with many states having simply adopted MBCA § 8.08 verbatim, as Indiana expressly declined to do.

factors in doing so with lessened fear of being held liable to shareholders for breaching their duties as a director.

■ Section 23–1–33–8(a) can be seen as part of the IBCL's general tendency toward increasing the power of the board of directors in lockstep with a policy of discouraging hostile takeovers, or more precisely the hostile takeover of a corporate board. In other words, an entity contemplating a hostile takeover of an Indiana corporation first faces the hurdle of the Control Shares Acquisition Statute. If that entity is granted full voting rights, it faces the prospect (in a corporation with a staggered board) of having its chosen directors immediately voted off of the board by the incumbent directors. Furthermore, the acquiring entity cannot hold the incumbent directors liable for their decisions, even if they were made after consideration of factors other than maximizing corporate profit, unless the directors willfully or recklessly breached their directorial duties.

Still, controlling shareholders are not powerless to effect a change in their corporation's management. Section 23–1–33–8 also clearly gives shareholders the power to remove directors from the board, and those incumbent directors who do not share the controlling shareholders' vision for the corporation may be removed by shareholder vote and replaced with directors friendly to the controlling shareholders. Of course, we acknowledge that

Murray was actually an incumbent director in this instance and there is no evidence that his removal was part of an antitakeover measure. This does not change the plain language of Section 23–1–33–8(a), however, or decrease the ability of a corporate board to oust one of its own.[6]

■ Public policy choices are better left to elected representatives in the legislative branch of government. The legislature defines public policy through the enactment of statutes. *IDS Property Cas. Ins. Co. v. Kalberer,* 661 N.E.2d 881, 885 (Ind. Ct.App.1996), *trans. denied.* Our task is to interpret and give effect to those policy choices. It is clear to us that Indiana has chosen to go in a direction opposed to Delaware and other states by granting a board of directors unlimited authority in removing fellow directors. Such a decision was within the General Assembly's prerogative. Our federal system provides individual states with "broad latitude in experimenting with possible solutions to problems of vital local concern." *Whalen v. Roe,* 429 U.S. 589, 597, 97 S.Ct. 869, 875, 51 L.Ed.2d 64 (1977). The regulation of the internal governance of domestic corporations is an area uniquely within the authority of individual state governments. *See CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 89–91, 107 S.Ct. 1637, 1649–50, 95 L.Ed.2d 67 (1987). Hence, we will not force upon Indiana the public policy of other jurisdictions against

---

**6.** Commentators frequently criticize state antitakeover laws that they consider to be excessive and overly protective of incumbent directors at the expense of shareholders. Such laws are part and parcel of not only a desire to protect local economies (i.e., by preventing foreign corporations from taking over and moving a domestic corporation's jobs and assets out-of-state) but also of competition between the states in encouraging corporations to incorporate (or stay incorporated) in their particular state. The logic is that antitakeover laws granting broad protections and authority to incumbent management will encourage management to seek incorporation or reincorporation in a state with such laws. Some commentators have favored a degree of federal intervention in corporate takeover law in order to counterbalance the states' competitiveness in enacting management-friendly laws. *See generally* Lucian Arye Bebchuk and Allen Ferrell, *A New Approach to Takeover Law and Regulatory Competition,* 87 Va. L.Rev. 111 (2001).

allowing board removal of directors, where our legislature has clearly rejected that policy and adopted an opposite one.

In the present case, a majority of Conseco's board of directors determined that Murray should no longer serve as a company director. Indiana Code Section 23–1–33–8(a) provided the board with the authority to remove Murray, regardless of how he came to be seated on the board or the reasons why the other board members wished to remove him. Murray's argument that he may have been removed from the board for an "improper" reason is irrelevant for purposes of determining whether he was properly removed under the IBCL and does not create a material issue of fact in this case. Additionally, Conseco's articles of incorporation and by-laws do not limit the board's general authority to remove directors, and contrary to Murray's argument they did not have to grant such authority because it is derived automatically from the IBCL. Murray has no cause of action to be reinstated on the board as a matter of law, and the trial court properly entered summary judgment in Conseco's favor. Conseco's shareholders have options to pursue if they are unhappy with the decisions being made by a majority of the board, but Murray in his capacity as a former director does not.[7]

## Conclusion

The General Assembly has made the clear policy choice in the IBCL to permit Indiana corporate boards to remove directors with or without cause, even if such a director was elected to that position by the corporation's shareholders, unless the corporation's articles of incorporation provide otherwise. Conseco's do not, and thus its board possessed the authority under the IBCL to remove Murray, despite his recent election by the shareholders. The trial court properly concluded Conseco was entitled to judgment as a matter of law.

Affirmed.

SULLIVAN and VAIDIK, JJ., concur.

7. We agree with Conseco that Murray has attempted to interject a new issue in this appeal that was not presented to the trial court, namely, that he may be entitled to damages for his removal from the board even if that removal was not "wrongful" under the IBCL. We have reviewed the materials and arguments presented below and see no indication that any such argument was made. In fact, Murray's counsel stated at the summary judgment hearing: "I'm simply requesting that, that his term as a Director would appear to be uninterrupted and I'm, had not thought of any fees unto [sic] the extent there a[sic] few, we, we don't care about them." Appellee's App. p. 24. When appealing a grant of summary judgment, "[a] party cannot change its theory and on appeal argue an issue which was not properly presented to the trial court." *Franklin Bank and Trust Co. v. Mithoefer,* 563 N.E.2d 551, 553 (Ind.1990). Furthermore, Conseco clearly did not have unequivocal notice that Murray was claiming entitlement to damages regardless of whether his removal was proper under the IBCL, in which case we might have considered Murray's arguments on this point. *Cf. Fortmeyer v. Summit Bank,* 565 N.E.2d 1118, 1121 (Ind.Ct.App.1991).