CITICAPITAL f/k/a Associates Commercial Corporation and Citicapital Commercial Leasing Corporation a/k/a Associates Leasing, Inc., Appellants–Defendants,

v.

BRIDGESTONE/FIRESTONE, INC., North American Tire, LLC, Appellee–Plaintiff.

No. 18A02–0407–CV–639.

Court of Appeals of Indiana.

May 16, 2005.

## OPINION

HOFFMAN, Senior Judge.

Defendants–Appellants Citicapital Commercial Corporation ("Citicapital Commercial") and Citicapital Commercial Leasing Corporation ("Citicapital Leasing") appeal the trial court's entry of summary judgment in favor of Plaintiff–Appellee Bridgestone/Firestone, Inc., North American Tire, LLC ("Bridgestone").

We reverse.

The issue before us is: whether the trial court erred by entering summary judgment for Bridgestone.

For purposes of summary judgment, the parties stipulated to certain undisputed facts. It is from this stipulation that we glean the following. Burlington Motor Carriers, Inc. ("Burlington") is a trucking company. Through the Defendants, Burlington had financed a portion of its fleet of vehicles and had leased another portion of its fleet. Bridgestone is a manufacturer and supplier of vehicle tires that maintains stores to sell tires, as well as to provide vehicle maintenance services. Burlington conducted business with Bridgestone to maintain its fleet of vehicles. In July 2001, Burlington filed for bankruptcy. Burlington then set up a payment schedule with Bridgestone for any work Bridgestone performed on Burlington's fleet. Burlington maintained the payment schedule until March 2002. Based upon Burlington's failure to pay, Bridgestone filed its blacksmith's lien on numerous vehicles

in Burlington's fleet on March 15, 2002. Bridgestone later filed a complaint against several defendants, including Citicapital Commercial and Citicapital Leasing, alleging that its blacksmith's lien had priority over the defendants' interests. Following certain procedural matters that are irrelevant to this appeal, only Citicapital Commercial and Citicapital Leasing remain as defendants. Bridgestone and the Defendants filed cross motions for summary judgment, and the trial court granted summary judgment in favor of Bridgestone. It is from this judgment that the Defendants now appeal.

Upon review of the grant or denial of a motion for summary judgment, we apply the same standard as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Illinois Farmers Ins. Co. v. Wiegand,* 808 N.E.2d 180, 184 (Ind.Ct.App.2004), *trans. denied,* 822 N.E.2d 975; *see* Ind. Trial Rule 56(C). The moving party bears the burden of designating sufficient evidence to eliminate any genuine factual issues, and once the moving party has fulfilled this requirement, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 461 (Ind.2002). We do not reweigh the evidence. *Metal Working Lubricants Co. v. Indianapolis Water Co.,* 746 N.E.2d 352, 355 (Ind.Ct.App. 2001). Instead, the court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts in favor of the nonmoving party. *Wiegand,* 808 N.E.2d at 184.

Citicapital Commercial contends that it had a security interest in certain vehicles at issue in this case at the time that Bridgestone recorded its blacksmith's lien on those vehicles. Thus, Citicapital Commercial argues, its security interest has priority over Bridgestone's blacksmith's lien.

At the time this dispute arose, Ind.Code § 32–8–21–1 set forth Indiana's blacksmith's lien.[1] This statute provided:

> Every person who at the request of his owner or his authorized agent shall shoe, or cause to be shod by his employees, any horse, mule, ox or other animal, or shall repair any vehicle, or cause the same to be repaired by his employees shall have a lien upon the animal shod or vehicle repaired for his reasonable charge for shoeing or repairing the same, and *each lien conferred by this chapter shall take the precedence of all other liens or claims thereon not duly recorded prior to recording claim of lien* as hereinafter provided; but such lien shall not attach where the property has changed ownership prior to the filing of such lien.

(Emphasis added). As the italicized statutory language indicates, a blacksmith's lien is a statutory lien that takes precedence over all other liens that are recorded **after** the recording of the blacksmith's lien. However, the statute is silent as to the priority of a blacksmith's lien when the competing claim or lien is filed or perfected *prior to* the blacksmith's lien. This is the situation involved in the present case.

A question of statutory interpretation is a matter of law, and we are neither bound by, nor are we required to give deference to, the trial court's interpretation. *Perry-Worth Concerned Citizens v. Board of Com'rs of Boone County,* 723 N.E.2d 457, 459 (Ind.Ct.App.2000), *trans. denied.*

---

1. The current blacksmith's lien statute is codified at Ind.Code § 32–33–1–1.

When interpreting a statute, we look to the express language of the statute and the rules of statutory construction. *Indiana State Teachers Ass'n. v. Board of School Com'rs of City of Indianapolis,* 693 N.E.2d 972, 974 (Ind.Ct.App.1998). We may not interpret a statute that is clear and unambiguous on its face. *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 215 (Ind.Ct.App.1999), *trans. denied.* Rather, the words of the statute are to be given their plain, ordinary and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* Additionally, the language employed in a statute is deemed to have been used intentionally. *Id.* When certain items or words are specified or enumerated in the statute, by implication other items or words not so specified are excluded. *Robbins v. Canterbury School, Inc.,* 811 N.E.2d 957, 961 (Ind.Ct. App.2004).

The clear and unambiguous meaning of the blacksmith's lien statute is that blacksmith's liens are granted priority over all liens filed *subsequent to* the recording of the blacksmith's lien. However, as we noted previously, the blacksmith's lien statute is silent as to the priority between a blacksmith's lien and another claim when the other claim is recorded or perfected *prior to* the blacksmith's lien. Bearing in mind that the enumeration of certain items or words in a statute implies the exclusion of all others, we conclude that the blacksmith's lien does not take priority over claims or liens filed or perfected *prior to* the recording of the blacksmith's lien. If the legislature wanted the result to be otherwise, it simply could have stated that blacksmith's liens "take the precedence of all other liens or claims thereon" without the limiting language of "not duly recorded prior to" the recording of the blacksmith's lien. *See* Ind.Code § 32–8–21–1. Interestingly, the legislature amended the blacksmith's lien statute in 2002 and did not modify, in any substantive way, the clause regarding the relative priority of a blacksmith's lien. *See* Ind.Code § 32–33–1–1.

Here, as part of the Defendants' motion for summary judgment, Citicapital Commercial filed the affidavit of an employee who had access to, and control and custody of, the books and records of Citicapital Commercial. Attached as exhibits to the affidavit are certificates of title to certain vehicles in which Citicapital Commercial claims a secured interest. These certificates of title list Associates Commercial Corporation, the predecessor of Citicapital Commercial, as the first lienholder. Further, the dates of issue on all of these certificates of title are between February 5, 1997 and August 25, 1999, well before the filing of Bridgestone's blacksmith's lien on March 15, 2002.[2] Therefore, having determined that a lien or claim filed prior to the recording of a blacksmith's lien takes priority, we conclude that the lien interests of Citicapital Commercial which were filed prior to the recording of the blacksmith's lien of Bridgestone have priority over Bridgestone's blacksmith's lien.

The two cases relied upon by Bridgestone to support its argument that its statutory blacksmith's lien should take priority over Citicapital Commercial's prior security interests are inapposite to the present case. In *Watts v. Sweeney,* 127 Ind. 116,

**2.** The parties agree that Citicapital Commercial had a lien interest in some of the vehicles contained in Burlington's fleet at the time Bridgestone performed work on these vehicles and filed its blacksmith's lien. *See* Stipulation of Undisputed Facts, Appellant's Appendix, Vol. I at 27, ¶ 12. In its brief, Bridgestone notes that, for purposes of this litigation, it does not dispute that Citicapital Commercial noted its liens on the certificates of title of these vehicles.

26 N.E. 680 (1891), the court dealt with a predecessor of the modern mechanic's lien statute that did not actually create a lien but merely provided the manner of enforcing a lien that arose at common law. *Church Bros. Body Service, Inc. v. Merchants Nat. Bank and Trust Co. of Indianapolis,* 559 N.E.2d 328 (Ind.Ct.App.1990) also deals with a mechanic's lien, not a blacksmith's lien. The mechanic's lien statute does not provide an indication of the priority or subordination of a mechanic's lien to a prior security interest, as does the blacksmith's lien statute. Because the mechanic's lien statute does not provide for the resolution of priority disputes between a mechanic's lien and a prior security interest, this Court in *Church Bros.* turned to common law rules. The Court stated that "[s]ince the lien statutes do not provide for resolution of priority disputes between a[ ] mechanic's lien and a prior perfected security interest, we must examine Indiana's common law rules." *Id.* at 331. However, we need not follow this path because the blacksmith's lien statute, unlike the mechanic's lien statute, includes a clause regarding the relative priority of a blacksmith's lien. Ind.Code § 32–8–21–1 determines the priority of the parties' respective liens and, under that statute, Citicapital Commercial's security interest takes priority.

The second and final issue upon which the Defendants assert error in the granting of summary judgment is the validity of Bridgestone's blacksmith's lien. Particularly, Defendants claim that Bridgestone failed to comply with the statutory requirements to obtain a valid blacksmith's lien on the vehicles owned by Citicapital Leasing.

■ Again, we turn to the statute. Ind. Code § 32–8–21–3 provides [3]:

Such claim for lien shall state the name and residence of the person claiming the lien, the name of the owner of the animal or vehicle sought to be charged with the lien and a description sufficient for identification of the animal or vehicle upon which the lien is claimed and the amount due the claimant, as near as may be, over and above all legal set-offs. The claim for lien filed with the recorder of the county under section 2 of this chapter shall expire and become void and of no effect if suit is not brought to foreclose the same within three (3) months after filing claim therefor.

Here, Bridgestone filed its blacksmith's lien, naming itself as the entity claiming the lien and stating its address. The lien is directed to Burlington, only, and lists Burlington's address. The Defendants assert that Bridgestone does not have a valid blacksmith's lien because it failed to fulfill the statutory requirements in obtaining the lien. Specifically, the Defendants claim that Citicapital Leasing owned some of the vehicles included in the lien at the time the lien was filed. Bridgestone does not dispute this fact. Indeed, the parties' Stipulation of Undisputed Facts recites that at the time Bridgestone worked on the vehicles and at the time Bridgestone filed its lien, Citicapital Leasing owned some of the vehicles upon which Bridgestone is attempting to hold a lien. *See* Stipulation of Undisputed Facts, Appellant's Appendix, Vol. I at 27, ¶ 11. Yet, Citicapital Leasing was not named in the lien as an owner as required by the statute. Moreover, Bridgestone does not address this issue in its brief to this Court.

When interpreting a statute, we look to the express language of the statute, *Indiana State Teachers Ass'n.,* 693 N.E.2d at 974, and we give the words their plain, ordinary and usual meaning. *Schafer,* 714

---

**3.** The current version of this statute is located at Ind.Code § 32–33–1–3.

N.E.2d at 215. We may not interpret a statute that is clear and unambiguous. *Id.* The blacksmith's lien statute uses the mandatory term "shall," rather than the permissive term "may," when imposing the duty to include the name of the owner of the vehicle in the lien. This requirement serves the obvious purpose of putting the owner of the vehicle on notice that a claimant is attempting to hold a lien on the vehicle. Bridgestone failed to do this, thereby frustrating the purpose of the statute. In accordance with the strict rules of statutory construction, we conclude that Bridgestone did not comply with the requirements of the statute. Thus, due to its failure to comply with the statute, Bridgestone has no valid blacksmith's lien with regard to those vehicles owned by Citicapital Leasing.

The trial court erred in entering summary judgment in favor of Bridgestone because Citicapital Commercial's security interest takes priority over Bridgestone's blacksmith's lien for those vehicles in which Citicapital Commercial held a security interest at the time Bridgestone performed its work and filed its lien. In addition, the trial court erred in granting summary judgment to Bridgestone with regard to the vehicles owned by Citicapital Leasing at the time Bridgestone performed its work and filed its lien. With respect to these vehicles, the blacksmith's lien is not valid due to Bridgestone's failure to fulfill the statutory requirements.

Reversed.

NAJAM, J., and VAIDIK, J., concur.