## MILK CONTROL BOARD *v.* PURSIFULL.

[No. 27,562.   Filed December 30, 1941.   Rehearing denied
January 26, 1942.]

*Browne, Campbell & Gemmill,* of Marion, and *Charles G. Dailey,* of Indianapolis, for appellant.

*Van Atta, Batton & Harker,* of Marion, for appellee.

Swaim, J.—The facts essential to a decision herein, as specially found by the court, are as follows:

The appellee, Ensley A. Pursifull, is a farmer living in Grant County, Indiana, near the City of Marion, where he cultivates his own farm. During the time here in question he owned and milked seven cows. Said cows were milked morning and night in the dairy barn located upon his farm. The milk was milked into three-gallon buckets, from which it was poured into two five-gallon milk cans, which were kept in convenient places in the dairy barn while the milking was being done. As the milk was poured into the five-gallon milk cans it was strained through a piece of outing-flannel cloth.

Approximately five to six gallons of milk were taken from the cows at each milking. The five-gallon cans were then carried to a milk house which was located near the dairy barn. The milk house contained two rooms, one of which contained a table, an icebox and machinery and equipment for washing all vessels used in connection with the milk. The icebox was not used as a refrigerator but only as a cupboard in which to keep the utensils used in connection with the milk. The two five-gallon cans were placed upon the floor in the other room of said milk house after each milking. From May 27, 1940 to July 19, 1940, the appellee sold milk produced by his cows to certain customers or buyers, who were required by him to bring their own containers. At the time of a sale, the milk was poured from one of the five-gallon cans into a one-gallon measuring can, from which it was poured into the customer's container. The appellee owned no unit containers for milk other than the two five-gallon cans. He did not put any milk produced from his cows in bottles or other unit containers in which it was designed to be sold. Prior to July 1, 1940, the appellee cooled said milk with certain equipment which he kept in his milk house for that purpose, but since July 1, 1940, said milk has not been cooled by appellee by the use of any mechanical equipment. The appellee at no time distributed any milk by means of any vehicle or in any other manner, nor did he, at any time, expose any milk for sale upon or about his premises in any bottles or any other unit containers in which the milk was designed to be sold. The appellee did not sell nor offer to sell, at wholesale or retail, any milk produced from his herd, which he had put in bottles or other unit containers in which it was designed to be sold nor any milk produced from his dairy herd which he had cooled,

pasteurized, standarized or otherwise processed for the purpose of selling, and appellee is not now threatening to do either of said things.

The record discloses that on September 28, 1940, the appellant, Milk Control Board of the State of Indiana, filed a second amended complaint against the appellee in which it was alleged that the appellee was putting milk produced from his herd in bottles or other unit containers in which it was designed to be sold; that he was cooling and processing such milk for the purpose of selling and distributing the same, at wholesale and retail, and that he was selling such milk at wholesale and retail on his said farm; that the appellee was doing all this although he had at no time applied to the Milk Control Board for a license to engage in the business as a distributor, producer-distributor, broker or otherwise, as defined in ch. 281 of the Acts of 1935, p. 1365, as amended, and had at no time paid the license fee imposed by said act with respect to the business in which he was engaged as aforesaid; that the appellee had at all times, since July 1, 1939, performed the functions of a milk dealer and engaged in business as such, exactly in the same manner as alleged in said complaint and had sold milk from his own dairy herd at wholesale and retail to numerous persons; that the appellee had so engaged in business without a license on each day of the period commencing July 1, 1939, and ending as of the date of the filing of the complaint; and that the appellee was then threatening to and would, unless enjoined, continue in the conduct of business as a distributor of milk for human consumption as alleged without complying with the provisions of said ch. 281 of the Acts of 1935, as amended.

The complaint concluded with a prayer that the appellee be enjoined from further violation of the licensing

provisions of said act and for all other proper injunctive relief in the premises.

To this complaint the appellee filed an answer in general denial and the cause was submitted to the court for trial with a request for special findings of fact and conclusions of law thereon.

On the facts found the court concluded that the law was with the appellee and that the appellant, Milk Control Board of the State of Indiana, was not entitled to an injunction enjoining the appellee from violation of the licensing provisions of said act. Judgment was entered accordingly.

The question involved herein is whether the appellee, producing and handling milk as he did, came within the definition of "milk dealer" as defined by said Milk Control Act, for it is only such "milk dealers" who are required by said act to be licensed.

The Legislature of 1935 enacted the first milk control law in this state. Acts of 1935, *supra*. The title thereof was "An Act declaring an emergency concerning the production and distribution of milk, creating a milk control board and defining its powers and duties, and declaring an emergency."

Paragraph "f" of § 2 of said act defines the term "milk dealer" as follows:

"The term 'milk dealer' means and includes all persons defined herein as 'distributor,' 'producer-distributor,' 'distributing broker,' and 'retail store,' excepting producer co-operatives organized under an act entitled 'An Act in relation to agricultural co-operative associations and societies,' approved February 23, 1925, as amended, February 26, 1931, which sell milk co-operatively to milk dealers, but only with respect to such part of their milk as they do sell as aforesaid."

The appellee does not come within the definition of "milk dealer" unless he is a "producer-distributor,"

for clearly he does not come within any of the ■ other classifications of "milk dealer." Paragraph "j" of § 2 of said act defines "producer-distributor" as follows:

"The term 'producer-distributor' means and includes any person owning, or managing, or controlling a dairy herd or herds, who puts only the milk produced therefrom in bottles or other unit containers in which the same is designed to be sold, or cools, pasteurizes, standarizes, or otherwise processes such milk for the purpose of selling or distributing the same at wholesale or retail, or who sells or distributes such milk at wholesale or retail."

The appellant insists that under this definition any one is a "producer-distributor" who takes milk from a herd of cows, which he owns or is managing or controlling and sells the same at wholesale or retail; that the words "such milk" in the last clause of said definition must be considered as referring only to milk produced by "any person owning, or managing, or controlling a dairy herd or herds." The appellee rightly contends that this interpretation of the definition would make the intervening portion of said definition surplusage; that such interpretation would make entirely unnecessary the two intervening clauses concerning the placing of such milk in bottles or other unit containers, and concerning the cooling, pasteurizing, standardizing or otherwise processing of such milk.

It is significant that the word "milk" is not mentioned in the first clause of this definition, but is used for the first time in the second clause thereof as "the milk" which is put in bottles or other unit containers. It might well be argued that "such milk" as used in the last clause of this definition referred back to "the milk" described in the second clause of said definition.

In the interpretation of a part of a statute we must consider the act as a whole and its general purpose. The language in § 1 of the 1935 act, particularly, ■ and the other sections of the act, in general, show that the real purpose of the act was "to promote, foster and encourage the intelligent and orderly marketing of milk through producer có-operative associations" and to abolish "unfair, unjust, destructive and demoralizing trade practices," and to attempt to adjust prices of milk in such a manner as to bring such prices into proper relation with prices which farmers are compelled to pay for commodities which they buy. It is apparent from the language of this act, as originally enacted in 1935 (Acts of 1935, *supra*), and as amended in 1937, (ch. 215, Acts of 1937, p. 1071), that the real purpose of the Milk Control Act was to regulate the marketing and price of milk and not to provide for sanitary regulations relative to the production or distribution of milk. If the primary purpose of this act had to do with sanitary regulations it would be more difficult to see why appellee should not be included within its provisions.

In the original act "producer" was defined as being "a person producing milk within the State of Indiana for sale as human food." Paragraph "g" § 2, Acts of 1935, *supra*. A "distributor" was defined as including "all persons who purchase, accept or receive milk for the purpose of putting such milk into bottles or other unit containers in which the same is designed to be sold or distributed, or for the purpose of cooling, pasteurizing, standardizing or otherwise processing such milk, or for the purpose of selling, jobbing or distributing such milk at wholesale or retail, or for any two or more of such purposes." Paragraph "i", § 2, *supra*. Paragraph "j", § 2, *supra*, seems to be an

attempt upon the part of the Legislature to combine these two classifications, "producer" and "distributor" into a third classification, designated as "producer-distributor."

It is to be noted that the term "milk dealer" as defined in said act does not include "producer." Therefore, a "producer" was not required to procure a license from the Milk Control Board, although under the terms of the 1935 act *supra* the producer was one who produced "milk within the State of Indiana for sale as human food." If the intention of the Legislature had been as contended for by the appellant it would have been more simple to have defined "milk dealer" as also including "producer" and thereby have obviated the necessity of making a third classification under the name "producer-distributor."

The definitions in this act have not been amended since 1937, but the appellant insists that in the Milk Control Act of 1941, (ch. 198, Acts of 1941, p. 599, § 4), we have light thrown on this question by the last proviso of § 4 of said act, which provides:

> "That any person owning, managing, or controlling a dairy herd or herds, who sells only the milk produced therefrom at retail to persons coming to the premises where such herd or herds are kept and milked and there buying such milk of such owner, manager, or controller, shall be exempt from that part and that part only of this act fixing said retail prices."

The principal part of this section has to do with the determination and fixing of fair and equitable prices which licensees shall receive for milk sold either to another licensee or to the consuming public and it is the contention of the appellant that the appellee comes within the provisions of said proviso. Since the principal part of said section, however, provides only for

determining and fixing prices for licensees it would seem that said proviso would likewise apply only to licensees and would, therefore, not apply to the appellee unless his method of producing and handling milk comes within the definition of "producer-distributor," and, therefore, makes it necessary for him to procure a license.

We are of the opinion that in construing the definition of "producer-distributor," the rule of construction which requires us to consider the entire act and its purpose and, if possible, to give some force and effect to all of the language contained therein, requires us to conclude that the Legislature must have intended the term "such milk," contained in the last clause of said definition, to refer to the milk produced by a person from herds which he owned, or managed, or controlled, and which he placed in bottles or other unit containers in which it was designed to be sold, or which he cooled, pasteurized, standarized or otherwise processed for the purpose of selling or distributing the same at wholesale or retail.

Appellant also insists that if the definition of "producer-distributor" be interpreted as contended for by the appellee we have no reasonable basis for classification between a person coming within said definition and the appellee. With this contention we cannot agree. We believe the Legislature would be justified in concluding that a man producing milk and selling it without putting it in containers or bottles in which the same was designed to be sold, and without cooling, pasteurizing or otherwise processing it for the purpose of selling it, at wholesale or retail, would not do sufficient milk business to affect the general price or marketing of milk.

The most that can be said for the appellant's contention in this case is that the definition of "producer-distributor" as contained in the statute is ambiguous. Since the statute requires certain persons as therein defined to procure a license before engaging in the business of producing and handling milk and provides for a penalty for failure to comply with the provisions of the act, all doubts or ambiguities in the act should be resolved in favor of the appellee. *Bienz* v. *State* (1934), 206 Ind. 482, 485, 190 N. E. 170; *Manners* v. *State* (1936), 210 Ind. 648, 654, 5 N. E. (2d) 300. As said by this court in the latter case:

> "It is fundamental that penal statutes are to be strictly construed; that a statute in derogation of a common right and highly penal in character is only to be applied to cases clearly within its provisions; that penalties may not be created by construction, but must be avoided by construction unless they are brought within the letter and the necessary meaning of the act creating the penalty. This requires that where there is ambiguity it must be resolved against the penalty, and only those cases brought within the statute that are clearly within its meaning and intention."

On the facts as found by the trial court we are of the opinion that the trial court did not err in its conclusions of law; that the appellee herein was not a "producer-distributor" within the meaning of said act and was not required to procure a license.

The judgment is affirmed.

NOTE.—Reported in 38 N. E. (2d) 246.