Dennis MURRAY, Sr., Appellant (Plaintiff Below),

v.

CONSECO, INC., Appellee (Defendant Below).

No. 29S02–0309–CV–410.

Supreme Court of Indiana.

Sept. 15, 2003.

Michael A. Wilkins, Brian J. Paul, Indianapolis, IN, Attorneys for Appellant.

Joseph H. Yeager, Jr., Scott D. Himsel, Indianapolis, IN, Attorneys for Appellee.

**ON PETITION FOR TRANSFER**

BOEHM, Justice.

This case deals with the provisions of the Indiana Business Corporation law governing the removal of directors. Conseco, Inc. is an Indiana corporation organized under the Business Corporation Law. Conseco's articles of incorporation have no provisions regarding removal of directors. Dennis Murray, Sr. was elected to the Board by the shareholders as a whole, and not by a separate "voting group." Under those circumstances, we affirm the trial court's ruling that the Board of Directors was within its authority when it removed Murray as a director of the corporation.

### Factual and Procedural History

Conseco is a publicly traded corporation whose common shares were listed on the New York Stock Exchange until they were delisted in 2002. Conseco's directors are elected by vote of the shareholders to staggered three-year terms. There is only one class of common stock, and some preferred shares also have voting rights. All common and voting preferred shares vote together to elect directors. Conseco's articles and bylaws have no provision addressing the removal of directors. As a result, the statutory provisions for removal of a director apply to this dispute.

Murray was first elected to a three-year term on Conseco's Board of Directors at the annual meeting of the shareholders of the corporation in 1994. He was re-elected in 1997 and again in June 2000. On December 12, 2000, Conseco's Board of Directors voted to remove Murray as a director. That same day Murray filed a declaratory judgment action challenging his removal as a violation of the Indiana Business Corporation Law (BCL). Specifically, he contended that he was elected to the Board by the shareholders and only the shareholders could remove him. The trial court granted summary judgment in favor of Conseco and the Court of Appeals affirmed. *Murray v. Conseco, Inc.*, 766 N.E.2d 38 (Ind.Ct.App.2002).

### I. Removal of a Director by Board Action

Indiana's BCL is largely drawn from the Model Business Corporation Act (MBCA), but includes a number of unusual provisions. Unlike the MBCA, the Indiana version has a provision expressly addressing the authority of the board of directors to remove a director without cause. The BCL not only addresses this subject, but expressly authorizes removal by directors for every Indiana corporation unless the articles of incorporation provide otherwise. The same section of the BCL includes provisions retained from the MBCA addressing removal of directors elected by a "voting group," removal of directors elected by cumulative voting, and procedures for convening a shareholder meeting to remove a director.

This section, found at Indiana Code section 23–1–33–8, provides in its entirety:

## Removal

(a) Directors may be removed in any manner provided in the articles of incorporation. In addition, the shareholders or directors may remove one (1) or more directors with or without cause unless the articles of incorporation provide otherwise.

(b) If a director is elected by a voting group of shareholders, only the shareholders of that voting group may participate in the vote to remove that director.

(c) If cumulative voting is authorized, a director may not be removed if the number of votes sufficient to elect the director under cumulative voting is voted against the director's removal. If cumulative voting is not authorized, a director may be removed only if the number of votes cast to remove the director exceeds the number of votes cast not to remove the director.

(d) A director may be removed by the shareholders, if they are otherwise authorized to do so, only at a meeting called for the purpose of removing the director and the meeting notice must state that the purpose, or one (1) of the purposes, of the meeting is removal of the director.

### A. Removal of Directors Elected by "Voting Groups"

■ Murray contends that he was elected by a "voting group" and, by reason of subsection 8(b), cannot be removed except by the shareholders of that group. The Court of Appeals concluded that subsection 8(a) permitted removal of a director by a majority of the Board "without re-

gard as to how that director was elected to the Board." The Court of Appeals took the view that subsection 8(b) had no relevance to a removal by the directors. Rather, its effect was only to limit the shareholders who are eligible to vote at a shareholder meeting to remove a director who had been elected by a voting group of shareholders.

Both Murray's contentions and the Court of Appeals' view find solid footing in the literal language of the statute. Each relies on a specific section of the BCL and reasons from it to a logical conclusion. We think, however, that a reading of the statute as a whole leads to the conclusion that neither view is correct. We do not agree that subsection 8(b) has no effect on any removal by the Board. Rather, for the reasons given, we conclude that subsection 8(b) prohibits the removal by the Board of one of its members who was elected by a separate "voting group" of shareholders. However, we do not find Murray's removal improper. Murray was elected by a vote of all voting shares of Conseco. He does not enjoy the immunity from removal conferred by subsection 8(b) and was therefore properly removed by the Board under the authority conferred by subsection 8(a).

■ With the exception of the provision in subsection 8(a) for removal of a director by the "directors," section 8 tracks the language of the MBCA. The provision in subsection 8(a) for the removal of a director by the board without cause is highly unusual, and perhaps unique to Indiana.[1] As the Court of Appeals pointed out, most jurisdictions reserve the power to remove a member of the board to the shareholders

---

**1.** See MBCA Ann. § 8.08, at 8–72, discussing provisions in other states whose corporate laws are based on the MBCA. The commentary is not complete as to Indiana. It describes the Indiana statute as permitting removal "in any manner proved by the articles

of incorporation." That language appears in the first sentence of subsection (a), but the commentary ignores the reference to removal by directors in the second sentence of subsection (a).

who elected the director. Indeed some courts have found an agreement that purported to permit the board of directors to remove a sitting director to be contrary to public policy. *See, e.g., Dillon v. Berg*, 326 F.Supp. 1214, 1225 (D.Del.1971), aff'd, 453 F.2d 876 (3d Cir.1971). However, as the Court of Appeals pointed out, public policy is a matter for the General Assembly subject only to constitutional limitations on legislative authority. On this issue the General Assembly's expression of its policy is quite clear. The language of subsection 8(a) unequivocally vests the board with the power to remove one of its members. Moreover, the commentary to the Indiana BCL expressly noted and approved this unusual and specific provision.[2] Thus the Court of Appeals was clearly correct in its conclusion that the public policy of this state on this issue has been set by the legislature, and authorizes the board of directors to remove one of its members. In the absence of any constitutional challenge, the wisdom of the policy reflected in the statute is not for us to resolve.

The issue remains how to reconcile the unequivocal power of the board to remove, as provided in subsection 8(a), with the express provision in subsection 8(b) addressing removal of a director elected by a "voting group" of shareholders. Although Conseco has neither separate voting groups nor cumulative voting, the statutory provisions addressing removal of a director elected by one of these provisions are relevant to the construction of section 8 as it relates to this lawsuit. The Court of Appeals reconciled subsection (a) with

subsection (b) by concluding that subsection (b) has no application to a removal by the directors. Rather, under this view, subsection (b) regulates only the manner of conducting the shareholder vote if a shareholder vote is the means through which removal is sought. The same would presumably be true of subsections (c) and (d). The structure of subsections 8(b), (c) and (d) lends some support to this view as a matter of statutory construction. Subsection (b) speaks of the shares eligible to vote to remove a director elected by a "voting group," subsection (c) addresses the votes necessary for removal if cumulative voting is authorized, and subsection (d) specifies the means of calling the meeting for shareholders to act on a removal. Subsection (d) clearly relates only to the manner of conducting a shareholder removal of a director and seems to have no implication for how or whether the board of directors may remove one of its members. None of these three subsections by its terms directly addresses the power of either the shareholders or the directors to remove a member of the board. We think, however, that subsections (b) and (c) are not of the same character as subsection (d), and do in fact place restrictions on removal by the board.

We think that subsection (b) has significance in this case even though Conseco does not have directors elected by a separate "voting group." Section 8 is found in Chapter 33 of the BCL, which deals with "directors." Section 4 of that chapter expressly contemplates election of directors by "voting groups."[3] A "voting group" is

---

2. *See* Commentary to Ind.Code § 23–1–33–8. Indiana Code section 23–1–17–5 states that the official comments may be consulted by courts to determine the policies of the BCL, and this Court routinely relies on those comments in disputes concerning BCL provisions. *See, e.g., G & N Aircraft, Inc. v. Boehm*, 743

N.E.2d 227, 243 (Ind.2001); *Galligan v. Galligan*, 741 N.E.2d 1217, 1223 (Ind.2001).

3. I.C. § 23–1–33–4 provides:
Election of directors by classes of shares.— If the articles of incorporation authorize dividing the shares into classes, the articles may also authorize the election of all or a

one or a number of classes of stock entitled to vote separately on a matter presented to shareholders for a vote. This specifically authorizes a corporation to be structured in such a way as to guarantee specific bodies of shareholders that they will have representation on the board of directors. The utility of such an arrangement is often found in smaller corporations whose securities are not publicly traded. A typical use of directors elected by groups is to create an intentional deadlock to require consensus before the board can act in a closely held corporation. The technique may also simply guarantee a seat at the table to a minority shareholder group who holds a separate class of stock whose principal or sole difference from other classes is the right to elect one or more directors by its separate vote. *See* MBCA § 8.04 cmt. In either case, it is an important component of the corporate governance that the shareholders bargain for when they acquire stock in a corporation that has "voting groups" who vote separately for different seats on the board of directors.

Subsections (b), (c) and (d) came directly from section 8.08 of the MBCA, which had no provision for board removal of a director. The current MBCA version of subsection (a) is the same as the second sentence of the Indiana version, but without the words, "or the directors." Predecessor versions of the MBCA did not break these provisions down into subsections, but their substance was the same as the current version. Because the MBCA version of subsection (a) gave only share-

holders the right to remove, the subsequent subsections assumed that any removal of a director required a shareholder vote unless the articles provide otherwise. Accordingly, subsections (b), (c) and (d) were written to address only the process necessary for a shareholder vote to effect a removal. But restricting the power to remove to the shareholders of the "voting group" that elected the director has a very important purpose if the "voting group" is less than all of the shares. If the directors of such a corporation can act to remove one of their members without cause, the natural deadlock created by two voting groups could be shattered at any meeting where a quorum was present. If for any reason one director is absent, one group could oust the absent member and the other directors elected by the absent member's group. In a corporation such as Conseco, where all shareholders vote as one group, a majority of the shareholders could readily reverse such a coup by removing the surviving directors. But in a close corporation the shareholdings may be intentionally deadlocked at 50–50. In that case, shareholder removal is not an available remedy to cure a coup by one group's directors who obtain a temporary majority of a quorum. Similarly, if subsection (b) were no restraint on removal by the board, a "voting group" designed to give the minority a seat on the board could be easily frustrated. We think such dramatic changes in the statute were not contemplated by the BCL. Rather, we conclude that the specific provision in subsection (b) designed to preserve representation on the board by a "voting group" is

---

specified number of directors by the holders of one (1) or more authorized classes of shares. Each class (or classes) of shares entitled to elect one (1) or more directors is a separate voting group for purposes of the election of directors.

"Voting group" is defined by Indiana Code section 23–1–20–28 as:

One (1) or more classes or series that under the articles of incorporation or this article are entitled to vote and be counted together collectively on a matter at a meeting of shareholders. All shares entitled by the articles of incorporation or this article to vote generally on the matter are for that purpose a single voting group.

not overridden by the general authority in subsection (a) permitting directors to remove one of their members.

### B. Removal of Directors Elected "Generally" by the Shareholders

■ Murray was most recently elected to the Conseco Board of Directors at the annual meeting of shareholders held in June 2000. Like most directors of publicly held companies, Murray was elected along with the rest of management's slate by a vote of over ninety percent of the shareholders eligible to vote for directors. In Conseco's case, those shareholders were the holders of common stock listed on the New York Stock Exchange and also holders of preferred stock. All voting shares voted as one, except that each preferred share carried voting weight different from the one vote accorded each common share. Although there are no directors elected by any subset of Conseco's outstanding securities, Murray contends that the holders of the common and preferred stock collectively form a "voting group" that elected him. Because of our conclusion in Part I.A. that "voting group" representatives are protected from removal without cause by the directors, Murray argues that the shareholders are the only body that can remove him.

In support of his position Murray cites the last sentence of the statutory definition of "voting group," which says that "all shares entitled … to vote generally on the matter are for that purpose a single voting group." I.C. § 23–1–20–28. From this, Murray reasons that the shareholders as a body are a voting group who elected him, and, by reason of subsection 8(b), only the shareholders are authorized to remove him. There is a logic to Murray's position. This definition of "voting group" comes from section 1.40(26) of the MBCA. The Commentary to that section of the MBCA explains, as one would expect, that shares entitled to vote "generally" means shares that have a vote on a matter without any right to be counted separately. Thus all of Conseco's voting shares are in this category and constitute a single "voting group" for various purposes under the Act.

Despite the statutory definition of "voting group" in both the MBCA and in the Indiana BCL, we think this definition does not make Conseco's directors "elected by a voting group" as the term is used in subsection 8(b). We concluded in Part I.A. that subsection 8(b) operates as a limitation on the ability of the board to remove one of its members who was elected by a "voting group." However, we think "elected by a voting group," in subsection 8(b) refers to groups that elect separate directors, and does not apply to directors elected by a "voting group" consisting of all voting shares voting "generally."

First, subsection 8(b) is meaningless unless there are separate groups who elect separate directors. It makes no sense to speak of participation only by the shareholders in the group if there is only one group to consider. Second, the reason to find subsection 8(a) to prohibit removal of a director elected by a separate group of shareholders has no application to a director elected by all shareholders. We reach the conclusion that subsection 8(b) has the effect of precluding removal by the board, not by strict reading of the language of the subsection, but by attempting to fit subsection 8(a) into the logic of this comprehensive and detailed statute. Although the reading given subsection 8(b) by the Court of Appeals to Indiana's version is certainly consistent with the literal language of that section, it would frustrate the elevated status that section 4 clearly gives to board representation for less than majority shareholdings who are entitled to elect directors as a separate voting group.

For that reason, we concluded that subsection 8(b), carried over from the MBCA that assumed only shareholders could accomplish a removal, implies a prohibition on board removal of a director elected by a "voting group." That rationale has no application to a director elected by all of the shareholders.

Third, Murray's contention relies on the statutory definition of "voting group" to include a block of all shareholders if all are entitled to vote. Indiana's BCL is based on the MBCA, but layers onto that structure a number of unique provisions, of which the board's power to remove a director is one. We think there is an obvious purpose to treating all the shareholders as a "voting group," as that term is used in the MBCA and in other parts of the Indiana BCL. This definitional provision is necessary to make many provisions in the statute work properly in the case of a corporation that does not vote by class. For example, under Indiana Code section 23–1–30–1 voting lists at shareholder meetings are to be arranged "within each voting group by class," and section 23–1–38–3 requires that an amendment to the articles be approved by a majority of any voting group whose dissenters' rights are affected. These provisions, and several others, obviously are intended to apply not only to a separate "voting group" that has special voting rights, but also to the shareholders as a whole in the much more common situation where, as in Conseco's case, all shareholders vote together.

■ In sum, although we do not agree that subsection (b) permits removal by the directors if the director was elected by a separate "voting group," we nevertheless agree with the Court of Appeals' conclusion that the Board had the power to remove Murray. Concern for preserving the rights of a "voting group" has no application to Conseco. There is no separate group that elected Murray, and the implied protection subsection 8(b) gives to separate groups does not apply to him. Although we are mindful of the maxim that the language of the statute is the first and often the last resort in interpreting legislation, it is also important to bear in mind how statutory provisions interact. *See Milk Control Bd. v. Pursifull,* 219 Ind. 396, 402, 38 N.E.2d 246, 249 (1941) ("In the interpretation of a part of a statute we must consider the act as a whole and its general purpose."). In a complex and interrelated statute such as the BCL it is not unusual to find situations where a definition designed to accomplish one purpose has unintended consequences if applied literally across the board. We find an implied limitation on removal despite its absence from the literal language of section 8 to accommodate the needs of section 4. That concern goes only as far as the purpose of section 4 takes it. Limiting the board's power to remove directors elected by separate "voting groups" preserves the rights given under section 4 to minorities and fifty percent shareholder blocks to representation on the board. But that does not require immunizing all directors of all corporations in the face of the clear directive that the board has the power to remove one of its members. In both cases, we construe the specific provision (board power to remove and specific endorsement of voting group representation) to prevail over the general statutory definition. As a result the Board had authority under the statute to remove a member elected by the shareholders generally, as Murray was.

## II. Murray's Claim for Damages

■ Murray argues that the Board's action in removing him was grounded in "improper motives." The Court of Appeals concluded that the Board was autho-

rized to remove one of its members, and therefore there was no issue as to its motivation. We agree that under most circumstances shareholders are entitled to vote their shares as they see fit in their self interest. A publicly traded corporation presents no issue of the duties of officers, directors or shareholders in a close corporation as discussed in *Barth v. Barth,* 659 N.E.2d 559 (Ind.1995). Accordingly, if Conseco's shareholders had chosen to exercise their rights to remove Murray for any reason or for no reason at all, or for a reason grounded solely in their own perceived interests, Murray would have no claim. Removal by directors is another story, however. By adding directors to the entities authorized to remove a board member, the Indiana statute did not exempt the directors from the standards applicable to directors in any action they take. Directors are obligated to act in the interest of the corporation. Ind.Code § 23–1–35–1. If it is in the interest of the corporation as a whole to remove Murray, then Murray has no claim against the corporation or its Board for the implementation of that action, unless it constitutes a breach of contract. There is no implied contract not to remove him as director simply by reasons of his election. Moreover, as the Court of Appeals noted, Indiana's BCL is extremely deferential to directors' judgment as to what is in the corporation's interest. It erects a number of barriers to successful challenges to directors' actions, including notably a strong endorsement of the business judgment rule and a standard of good faith for director conduct. *Id.*

The directors are not defendants in this case and their liability is not an issue. However, an action taken by them in good faith after reasonable investigation is "conclusively presumed to be valid." I.C. § 23–1–35–1(g). If "valid," the removal is by definition not wrongful and forms no

basis for a claim in the absence of a breach of contract. The standard of good faith and reasonable investigation remains, however, before this principle is invoked.

Murray claims that even if the Board has the power to remove him without cause, this case must nevertheless be remanded for trial of his damages claim. He cites several items he describes as damages, all of which may have cost him loss, or at least lost expectations. These include "termination of non-vested options" and "deferred compensation," as well as several other lost forms of director compensation. It is unclear whether he claims these items as contract breach or some sort of wrongful action by the corporation. Neither theory is viable on the facts before us. To the extent Murray claims a contract, he cites no written agreement between him and Conseco, and none is pleaded as required by Trial Rule 9.2(A). There is no implied contract that Murray will not be removed by the Board if it concludes that that action is appropriate. To the contrary, the Indiana BCL contemplates that the possibility of removal and the terms of every director's employment are subject to its provisions unless some relevant document provides otherwise. In short, Murray's removal may have caused him loss, but he fails to allege compensable damages.

Finally, on appeal Murray seems to rely on a contract theory to recover his claimed damages. In the trial court his claim was solely that the removal was wrongful because it was contrary to statute and because it was beyond the power of the Board. He pleaded no other theory and alleged no "improper motive." Specifically, he made no claim that the directors were not acting in good faith or acted without reasonable investigation. Accordingly, he has presented no claims that the Board acted other than in exercise of its

judgment as to the corporation's interests. Accordingly, summary judgment was properly granted by the trial court on all issues raised by Murray's complaint.

## Conclusion

The judgment of the trial court is affirmed.

DICKSON, SULLIVAN, and RUCKER, JJ., concur.

SHEPARD, C.J., not participating.