NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

AOW MANAGEMENT LLC, et al.,
*Plaintiffs/Appellants*,

v.

SCYTHIAN SOLUTIONS LLC, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 20-0699
FILED 7-19-2022

---

Appeal from the Superior Court in Maricopa County
No. CV2016-013483
The Honorable Christopher Whitten, Judge

**AFFIRMED IN PART; VACATED IN PART AND REMANDED**

---

COUNSEL

Greenbriar Law, PLC, Phoenix
By Walid A. Zarifi
*Counsel for Plaintiffs/Appellants AOW Management and Yuri Downing*

Munger Chadwick & Denker, PLC, Tucson
By John F. Munger, John G. Anderson, Robert J. Metli
*Counsel for Plaintiffs/Appellants Demitri and Odelma Downing*

May Potenza Baran & Gillespie, Phoenix
By Jesse R. Callahan
*Co-Counsel for Defendants/Appellees*

Kercsmar Feltus & Collins, PLLC, Scottsdale
By Todd Feltus
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Acting Presiding Judge Randall M. Howe and Chief Judge Kent E. Cattani joined.

---

**M O R S E**, Judge:

**¶1** AOW Management, LLC ("AOW"), Demitri Downing, Odelma Downing, and Yuri Downing (collectively, the "AOW Parties") appeal from the superior court's grants of summary judgment and award of attorney fees. Demitri[1] additionally appeals the superior court's denial of his motion to set aside the judgment pursuant to Arizona Rule of Civil Procedure 60. For the following reasons, we affirm in part, vacate in part, and remand to the superior court.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2** Non Profit Patient Center, Inc. ("NPPC") was formed in 2011 to own and "operate a non-profit medical marijuana dispensary" and holds a license to cultivate and dispense medical marijuana. In 2012, after its articles of incorporation were amended, NPPC's Board of Directors ("the Board") had two members, David Pieser and Theodore Brinkofski.

**¶3** In May 2015, Dimitri was appointed as director and president of NPPC after Brinkofski resigned his seat. Although Demitri held the Board seat solely in his name, he claims he verbally agreed to share control of the seat with Yuri, his brother, and pay him half of any profits or proceeds resulting from ownership of the Board seat.

---

[1] Because some of the parties share last names, we refer to the parties by their first names for clarity and convenience.

2

¶4        Also in May 2015, Demitri and Yuri founded AOW, a for-profit management company.  Although AOW and NPPC never entered into a formal written agreement, AOW provided management services for NPPC on an *ad hoc* basis during 2015.

¶5        In late 2015, Yuri and Alex Lane entered into an agreement entitled "100% Transfer of AOW's Membership Right and Percentage Interest in Dolan Springs/Grasshopper Junction" ("Transfer Agreement") and Demitri, Yuri, and Alex executed a Transfer and Waiver Agreement. The particulars of these agreements are not the subject of this appeal but, generally, they transferred interests in various entities—including two LLCs incorporated by Alex, Scythian Management LLC and Scythian Solutions LLC ("Scythian Entities")—between the parties, with Yuri releasing any interest he had in NPPC, Demitri releasing any interest he had in AOW, and Scythian paying AOW $100,000.

¶6        Around the same time, Demitri resigned as director and president of NPPC and, along with Pieser, appointed Alex to replace him on the Board and serve as NPPC's president and treasurer.  According to Demitri, he resigned from NPPC under Alex's guidance, whom he believed was acting as his attorney, partner, and agent, to hide the Board seat from Demitri's wife, Odelma, in their pending divorce.  Demitri also claims that, despite his official resignation, the parties agreed that he would maintain a fifty-percent interest in the Board seat.  However, Alex independently managed NPPC, denied that Demitri had any interest in NPPC, and did not provide Demitri accountings regarding operating revenue.  Pieser later resigned from the Board and Alex appointed his mother, Sylvia Lane, as director and vice-president of NPPC.

¶7        This litigation began in 2016, when Yuri and AOW sued the Scythian Entities, Alex, and Demitri, alleging, among other things, breach of contract and fraud relating to the Transfer Agreement.  Yuri and AOW subsequently amended their complaint to include NPPC and Sylvia Lane as defendants, and dismissed claims against Demitri.

¶8        Before Yuri dismissed the claims against him, Demitri filed a cross-claim against Alex which, as later amended, alleged breach of contract, breach of implied covenant of good faith and fair dealing, and breach of fiduciary duty, among other things.  He also filed a third-party complaint against Sylvia alleging fraudulent transfer and seeking a constructive trust.  After resolving disputes with Dimitri, Odelma entered the litigation as a real-party-in-interest to Demitri's cross-claim.

**¶9** Eventually, the superior court granted summary judgment to the Scythian Entities, NPPC, Alex, and Sylvia ("Scythian Parties") on all claims the AOW Parties asserted and awarded the Scythian Parties attorney fees.

**¶10** The AOW Parties timely appealed the superior court's judgment but later moved to stay the appeal to file a motion for injunctive relief and motion to vacate judgment under Rule 60(B), due to changes in Arizona's marijuana laws. This Court granted the motion and stayed the appeal. After the superior court denied both the motion for injunctive relief and motion to vacate judgment, Demitri amended his notice of appeal to appeal the superior court's denial of the Rule 60 motion. We have jurisdiction under A.R.S. § 12-2101(A)(1), (2).

## DISCUSSION

**¶11** The AOW Parties argue that the superior court improperly granted summary judgment on the claims asserted by Demitri in his third-amended cross-claim and third-party complaint.[2]

**¶12** "We review de novo a grant of summary judgment, viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). "We will affirm a grant of summary judgment if the trial court was correct for any reason." *See Federico v. Maric*, 224 Ariz. 34, 36, ¶ 7 (App. 2010).

## I. Summary Judgment Regarding Damages.

**¶13** In July 2019, the superior court granted Alex and Sylvia summary judgment on numerous counts in the cross-claim. The court found that Demitri's claim for damages based on a director's ability to

---

[2] The superior court also granted summary judgment to the Scythian Parties on all of Yuri's and AOW's claims regarding the Transfer Agreement. However, Yuri and AOW do not present any arguments on appeal related to the Transfer Agreement and do not argue that the superior court erred in its rulings on their claims. Accordingly, we do not address those rulings. *See Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived.").

extract profits from the non-profit corporation via payments to a for-profit management company was a "faulty damages theory" that "would frustrate the clear intent of the Arizona Medical Marijuana Act" (the "AMMA"). The court also determined that Demitri timely disclosed his damages claims "based upon his ownership of the NPPC board seat," but failed to timely disclose other damages theories or computations. *See* Ariz. R. Civ. P. 26.1(a)(7) (requiring parties to disclose "a computation and measure of each category of damages alleged by the disclosing party" and "the documents and testimony on which such computation and measure are based" in the time set forth in a scheduling or case management order). Demitri does not challenge that determination on appeal.

¶14 The parties agree that non-profit medical marijuana dispensaries can be lucrative enterprises. However, as the superior court noted, there are "no ownership right[s] in a non-profit corporation." *Compare* A.R.S. § 10-701 to -747 (addressing "shareholders" in for-profit corporations), *with* A.R.S. § 10-3601 to -3640 (addressing "membership" in a non-profit corporation); *see also Deckard v. Comm'r of Internal Revenue*, 155 T.C. 118, 126-27 (2020) (noting "[n]onprofit corporations are not generally considered to have owners" and "there is no interest in a nonprofit corporation equivalent to that of a stockholder in a for-profit corporation who stands to profit from the success of the enterprise"); 1 Fletcher Cyclopedia Corp. § 68.05 ("One key distinction between nonprofit and for-profit corporations is that in a nonprofit corporation, shareholders or members do not have a proprietary interest in the corporation."); Henry B. Hansmann, *The Role of Nonprofit Enterprise*, 89 Yale L.J. 835, 838 (1980) ("Thus a nonprofit corporation is distinguished from a for-profit (or 'business') corporation primarily by the absence of stock or other indicia of ownership that give their owners a simultaneous share in both profits and control.").

¶15 Yet, Demitri argues that his damages claims are not based on an ownership interest in NPPC but rather an interest in controlling a seat on the Board. Accordingly, the question is whether Dimitri presented evidence of a Board seat's value which could result in recoverable damages based on the wrongful removal of a director. Dimitri asserts the superior court ignored evidence that control over a Board seat has value that can be recovered as damages because (1) directors can receive distributions of profits from a separate for-profit management company that manages the non-profit dispensary, (2) the Board seat itself has proven market value and can be transferred, and (3) Board members can be paid directly by NPPC. As discussed below, because Demitri did not present evidence to support

5

his claims for damages, the superior court did not err in granting summary judgment.

## A.     Dealings with a For-Profit Management Company.

**¶16**        The AMMA requires "[a] registered nonprofit medical marijuana dispensary . . . [to] be operated on a not-for-profit basis" and include in its bylaws "such provisions relative to the disposition of revenues and receipts to establish and maintain its nonprofit character." A.R.S. § 36-2806. Consistent with the statute, NPPC's bylaws provided that it "shall be operated on a nonprofit basis."

**¶17**        "[T]he very essence of a nonprofit corporation is its commitment not to distribute profits to controlling persons." Henry B. Hansmann, *Reforming Nonprofit Corporation Law*, 129 U. Pa. L. Rev. 497, 511 (1981). Thus, under the Arizona Nonprofit Corporation Act, a non-profit corporation and its directors are generally prohibited from making or receiving distributions, *see* A.R.S. § 10-11301; *Kromko v. Ariz. Bd. of Regents*, 149 Ariz. 319, 321 (1986) (stating "no earnings of the nonprofit corporation, other than reasonable compensation for services, shall be distributed to the corporation's members, directors or officers"), with distributions including "a direct or indirect transfer of money or other property or incurrence of indebtedness by a corporation to or for the benefit of its members in respect of any of its membership interest," A.R.S. § 10-3140(22). Correspondingly, NPPC's bylaws declared "[i]n no event shall profits be directly distributed to, or inure to the benefit of, any individual or entity" and "[a]ny receipts or profits above and beyond operating expenses and applicable costs shall be reinvested back into the Corporation or donated to other charitable causes."

**¶18**        However, the parties generally accept that it is common practice in the medical marijuana industry for directors of non-profit dispensaries to own a for-profit management company that contracts with the dispensary to provide management services at rates which effectively allow the dispensary's net profits to be diverted indirectly to the directors. The propriety of these arrangements is not before us.[3]

---

3        *But see* A.R.S. § 10-3830(A) (requiring a director to discharge the director's duties in "good faith" and in "a manner the director reasonably believes to be in the best interests of the corporation"); A.R.S. § 10-3833(A) (imposing personal liability on a director who "votes for or assents to" an illegal distribution); A.R.S. §§ 10-3860 to -3864 (providing rules for

¶19　　　　Even if we consider the "faulty damages theory" the superior court rejected (*i.e.*, the claimed ability to profit indirectly from a position on the board of directors of a non-profit corporation), Demitri presented no evidence of the value that could be extracted by a Board member via influence over the non-profit corporation's contract with a for-profit management company.　NPPC did not enter any formal management contracts and Demitri presented no evidence of the profits to be gained from such a contract.　Further, entering into a management agreement would have required "the unanimous consent and approval of the Directors then serving."　But Pieser, the other Board member serving with Demitri, had refused to enter into the management agreements Yuri and Demitri proposed, and Demitri did not present evidence that he could have garnered Pieser's approval to extract any calculable profits.　Thus, any value ascribed to Demitri's ability to enter into management contracts and profit from those contracts would be speculative and uncertain.　*See Schuldes v. Nat'l Sur. Corp.*, 27 Ariz. App. 611, 617 (App. 1976) (affirming summary judgment where "the damages sought in this suit do not have the requisite certainty of existence in order to allow their recovery"); *see also Coury Bros. Ranches, Inc. v. Ellsworth*, 103 Ariz. 515, 521 (1968) (stating "[d]amages that are speculative, remote or uncertain may not form the basis of a judgment"); *Gilmore v. Cohen*, 95 Ariz. 34, 36-37 (1963) (recognizing a plaintiff must "supply some reasonable basis for computing the amount of damage and must do so with such precision as, from the nature of his claim and the available evidence, is possible"); *cf. also Matthews v. Tele-Systems, Inc.*, 525 S.E.2d 413, 415-16 (Ga. Ct. App. 1999) (affirming summary judgment against director who was allegedly deceived into resigning because he could show no damages when other board members who engaged in the deception could have voted to oust him); *Ellens v. Chi. Area Office Fed. Credit Union*, 576 N.E.2d 263, 267 (Ill. App. Ct. 1991) (affirming summary judgment against plaintiff who was removed from a board of directors but provided no evidence to support claims of $50,000 in damages because "damages cannot be awarded on the basis of speculation or conjecture").

---

transactions involving director's conflicts of interest); Ariz. Admin. Code R9-17-310(A)(13)(e) (providing that "[a] dispensary shall . . . not engage in any other transaction that results in a substantial diversion of the dispensary's income or property"); *State v. Matlock*, 237 Ariz. 331, 336, ¶ 21 (App. 2015) (noting "the AMMA evinces a spirit of permitting patients to acquire the medicine they need, not creating a profitable medical marijuana industry").

### B.      Market Value of a Board Seat.

¶20      Demitri introduced some evidence of the market value of NPPC and an NPPC Board seat.  But NPPC's bylaws provided that Board seats must be filled by the unanimous consent and approval of the Board of Directors.  *Accord* A.R.S. § 10-3804 (noting directors are "elected, appointed or designated").  And Demitri did not demonstrate that he would be able to recover any value of a hypothetical sale of a seat on the Board because he did not present evidence that he would have been able to receive the unanimous consent and approval from the other Board member.  *See supra* ¶ 19; *Schuldes*, 27 Ariz. App. at 616 ("[N]o damages can be allowed for the loss of profits which is determined to be uncertain, contingent, conjectural, or speculative."); *see also Sec. & Exch. Comm'n v. Ins. Sec., Inc.*, 254 F.2d 642, 649 (9th Cir. 1958) ("It is a general principle of equity that a personal trustee cannot sell his office . . . [n]or may this be done by a corporate officer or director."); *Mitchell v. Am. Sav. & Loan Ass'n*, 122 Ariz. 138, 140 (App. 1979) (approving statement that "an agreement for a corporate officer to resign his office for a pecuniary benefit to himself would be void" (quoting *Cox v. Berry*, 431 P.2d 575, 577-78 (Utah 1967))).

### C.      Salary.

¶21      Demitri also argues that there is value in controlling a seat on NPPC's Board because directors could pay themselves a salary.

¶22      A non-profit corporation may fix the compensation of directors.  *See* A.R.S. § 10-3812 ("Unless the articles of incorporation or bylaws provide otherwise, the board of directors may fix the compensation of directors.").  *But see* Ariz. Admin. Code R9-17-310(13)(c) (prohibiting medical marijuana dispensaries from paying "compensation for salaries or other compensation for personal services that is in excess of a reasonable allowance").  NPPC's bylaws provided that "Directors and Principal Officers of the Corporation may be entitled to receive reasonable compensation from the Corporation, as good and valuable consideration by reason of serving on the Board of Directors, or as a Principal Officer, and for the services which the Directors and Principal Officers perform on behalf of the Corporation."

¶23      But the mere potential to vote oneself a salary does not have identifiable value when Demitri does not allege or provide any evidence of what his salary would have been and acknowledges he did not receive a salary for the approximately seven months he served as a director.  Instead, Demitri notes only that Alex received roughly $85,000 and Sylvia around

$30,000 in salary in 2018.  Additionally, NPPC's bylaws required that "[t]he compensation of any Director and/or Principal Officer of the Corporation shall be unanimously determined and approved by the Board of Directors." Because Demitri did not receive a salary, NPPC's bylaws did not set a director salary, and any potential salary depended on further Board action, *see supra* ¶ 19, no evidence supports this damages theory.  *See Gilmore*, 95 Ariz. at 36-37 (noting the burden is on the plaintiffs "to show the amount of their damages with reasonable certainty"); *see also Murray v. Conseco, Inc.*, 795 N.E.2d 454, 461-62 (Ind. 2003) (holding former director failed "to allege compensable damages" for loss of stock options, deferred compensation, and director compensation based on alleged improper removal from the board because there was "no implied contract" that a director would remain on the board).

## II.  Summary Judgment on Accounting and Rescission/Avoidance.

¶24  The superior court also granted summary judgment against Demitri and Odelma on their requests for the remedies of rescission and avoidance as well as accounting.  Although we affirm the grant of summary judgment on accounting, we vacate the grant of summary judgment as to the availability of rescission and avoidance.

### A.  Accounting.

¶25  The superior court properly granted summary judgment on Demitri's request for an accounting.  *See Dooley v. O'Brien*, 226 Ariz. 149, 155, ¶ 21 (App. 2010) ("Parties to a fiduciary relationship have a right to an accounting.  To be subject to court-ordered accounting, a defendant must appear to have been [e]ntrusted with property of the plaintiff and, in consequence to have become bound to reveal his dealings with it." (cleaned up)).  Demitri acknowledges that he is not claiming any ownership interest in NPPC.  And, because neither Demitri nor Odelma hold a position or ownership interest in NPPC, they are not entitled to an accounting of its operating revenue.  *See King Realty, Inc. v. Grantwood Cemeteries, Inc.*, 4 Ariz. App. 76, 81 (1966) (concluding a former director had no right to an accounting when no agency contract existed during the time for which an accounting was sought); *see also* A.R.S. § 10-11602 (providing a right to inspect and copy records of the non-profit corporation to a "member who has been a member of record [for] at least six months").

¶26  Demitri also argues that he is entitled to an accounting under Arizona's Revised Uniform Partnership Act.  *See* A.R.S. § 29-1033(B) (providing "[a] partnership shall provide partners and their agents and

9

attorneys access to its books and records"). However, "a general partnership is the residual form of for profit business association, existing only if another form does not." *Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 557, ¶ 19 (App. 2014) (quoting Revised Unif. P'ship Act § 202 cmt. 2) (emphasis omitted). Both NPPC and the Scythian Entities exist under other business forms. Therefore, a right to an accounting of these entities cannot be based in partnership law and the superior court did not err in granting summary judgment on the request for accounting.

## B. Rescission and Avoidance.

**¶27** Without addressing the merits of Demitri's claims, the superior court granted summary judgment on the requests for rescission and avoidance because (1) neither Demitri nor Odelma had a property interest in the Board seat and, alternatively, (2) Demitri had "unclean hands," and (3) rescission would be impracticable or impossible under the circumstances. The superior court erred in granting summary judgment for Alex and Sylvia on these grounds.[4]

**¶28** Rescission is a remedy which may be sought based on various theories, including fraud and breach of contract. *See Jennings v. Lee*, 105 Ariz. 167, 171-73 (1969) (action for rescission based on fraud); *Earven v. Smith*, 127 Ariz. 354, 356 (App. 1980) (breach of contract). Rescission is not a measure of damages. *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 34 (App. 1996). In general, rescission serves to "annul the contract and restore the parties . . . to the status quo before entering into the contract," *Hall v. Read Dev., Inc.*, 229 Ariz. 277, 285, ¶ 30 (App. 2012) (quoting *Reed v. McLaws*, 56 Ariz. 556, 562-63 (1941)), and "contemplates the 'undoing of the transaction,' whereby each party gives back to the other what it parted with in the original transaction," *Standard Chartered*, 190 Ariz. at 34. But "rescission is a flexible remedy in equity," *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1207 (9th Cir. 2012), and "equitable considerations [may] obviate the need for [return to] the status quo relationship," *Grand v. Nacchio*, 214 Ariz. 9, 27, ¶ 64 (App. 2006) (citation omitted). Thus, "[a]bsolute and literal restoration is not required. Restoration that is reasonably possible and demanded by the equities of the case is enough." *Id.* (quoting *Webb v. Webb*, 431 S.E.2d 55, 62 (Va. Ct. App. 1993)). And where

---

[4] Because we only engage the three specific grounds discussed by the superior court and the parties, we do not address other potential defenses to rescission.

full status-quo restoration is not practical, rescissory damages may be appropriate. *Id.* at 27-28, ¶ 65; *see also Jennings*, 105 Ariz. at 172-73.

### 1. Right to a Board Seat.

**¶29** Appellants have not cited, and we have not found, any authority regarding rescission of an agreement for the transfer of a board seat of a non-profit corporation. The superior court found that "a board seat in the nonprofit corporation NPPC is not something [Demitri and Odelma] ever had a property interest in possessing." But regardless of whether Demitri had a property interest in his Board seat, Dimitri once had a legal right to sit on the Board, having been appointed as a director and apparently entitled to hold his seat "until such time as [he] resigns or is removed pursuant to the[] Bylaws." If Demitri can establish that he surrendered his seat on the Board because of Alex's fraud, then rescission or avoidance may be an appropriate remedy. *See Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.*, 165 Ariz. 25, 28-29 (App. 1990) (noting a contract may be "voidable for fraud, duress, lack of capacity, mistake, or violation of public purpose" (quoting *U.S. Insulation, Inc. v. Hilro Const. Co.*, 146 Ariz. 250, 253 (App. 1985))); *see also Jennings*, 105 Ariz. at 172-73 (approving rescission as remedy for defrauded party to a contract); Restatement (Third) of Restitution and Unjust Enrichment § 54 ("A person who has transferred money or other property is entitled to recover it by rescission and restitution if the transaction is invalid . . . ."); *Hyde v. Woods*, 94 U.S. 523, 524-25 (1876) (finding that membership on the San Francisco Stock and Exchange Board was property); *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012) ("A trustee (or a fiduciary) who gains a *benefit* by breaching his or her duty must return that benefit to the beneficiary." (emphasis added)).

### 2. Unclean Hands.

**¶30** The superior court also erred in granting summary judgment based upon unclean hands. "The doctrine of 'unclean hands' is an equitable defense to a claim seeking equitable relief," *Tripati v. State*, 199 Ariz. 222, 225, ¶ 8 (App. 2000) (emphasis omitted), and is based on the rule that one who seeks "equitable relief must come with clean hands," *MacRae v. MacRae*, 57 Ariz. 157, 161 (1941). For unclean hands to bar relief, the plaintiff's bad acts "must relate to the same activity that is the basis for [the] claim." *Ezell v. Quon*, 224 Ariz. 532, 538, ¶ 26 (App. 2010) (citation omitted) (alteration in original).

¶31 The superior court did not specify in its order the basis for its unclean hands finding. However, Alex and Sylvia only urged unclean hands as a defense based on Demitri's alleged intent to improperly sell NPPC or the Board seat, or otherwise wrongfully profit from Board membership. Because Alex does not assert Demitri acted unconscionably or inequitably towards him, he cannot assert an unclean hands defense. *See Ezell*, 224 Ariz. at 538, ¶ 26 (noting for the doctrine of unclean hands to apply, there must be evidence that the party seeking relief, acted with "bad faith" or "unconscionable conduct" toward the party asserting the defense). Accordingly, the superior court erred in granting summary judgment on this basis. *See also Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989) ("The application of the unclean hands doctrine raises primarily a question of fact.").

### 3. Impracticality.

¶32 The court also granted summary judgment on the requests for rescission and avoidance because rescission would be impractical or impossible under the circumstances. But, as noted above, rescission is an equitable remedy and rescissory damages may be appropriate when true rescission is "impossible or infeasible." *Grand*, 214 Ariz. at 27, ¶¶ 64-65 (quoting *Standard Chartered*, 190 Ariz. at 34).[5]

¶33 NPPC continues to operate as a non-profit corporation and its board of directors is intact. *Cf. Strategic Diversity*, 666 F.3d at 1207-08 (finding true rescission "neither feasible or practical" when a former member of a corporation's board of directors sought his seat returned but there was no longer an existing board). Further, the parties dispute whether rescission would require the complete unwinding of NPPC's operations since 2016 and whether such relief is practical. We express no opinion on the merits of Demitri's claims or whether rescission of any or all of the agreements and transactions Demitri challenges may be appropriate. But because the "decision whether to fashion an equitable remedy lies within the trial court's discretion," the trial court must determine the extent to

---

[5] We do not suggest that Demitri is entitled to rescissory damages and the court's determination that Demitri failed to timely disclose other damages theories or computations may preclude such damages. However, in ruling as a matter of law that Demitri is not entitled to the remedy of rescission, the court did not properly evaluate and determine the extent to which rescission could be reasonably possible under the facts and equities of the case or whether damages may be appropriate to the extent rescission is impossible.

which rescission could be reasonable and possible under the facts and equities of the case. *Cal X-Tra v. W.V.S.V. Holdings, LLC*, 229 Ariz. 377, 409, ¶ 106 (App. 2012). And, in this case, neither party has yet established that such determinations may be resolved via summary judgment. *See Santiago v. Phx. Newspapers, Inc.*, 164 Ariz. 505, 508 (1990) ("The court may grant summary judgment only if no dispute exists as to any material facts, if only one inference can be drawn from those facts, and if the moving party is entitled to judgment as a matter of law."); *Eans-Snoderly v. Snoderly*, 249 Ariz. 552, 559, ¶ 26 (App. 2020) (finding the superior court erred in granting summary judgment based on the equitable defense of laches).

## III. Rule 60 Motion.

**¶34** Demitri argues the superior court erred in denying his Rule 60 motion because "the passage of Proposition 207 suddenly and fundamentally changed the rights of the litigants" and "[i]t would be inequitable, and unjust, to allow the trial court's judgment to stand." We review the denial of a Rule 60 motion for an abuse of discretion, *State ex rel. Brnovich v. Culver*, 240 Ariz. 18, 19-20, ¶ 4 (App. 2016), which occurs when "no evidence . . . supports the superior court's conclusion, or the reasons given by the superior court [are] clearly untenable, legally incorrect, or amount to a denial of justice," *In re Estate of Long*, 229 Ariz. 458, 464, ¶ 22 (App. 2012) (as amended) (cleaned up).

**¶35** In November 2020, Arizona voters passed Proposition 207, codified at A.R.S. §§ 36-2850 to -2865, which legalized adult use of recreational marijuana and allows entities with a marijuana establishment license to dispense marijuana to individuals over twenty-one years of age. *See* A.R.S. §§ 36-2854, -2858. It also allows non-profit medical marijuana dispensaries to become dual licensees, holding a marijuana establishment license in addition to their non-profit medical marijuana dispensary registration. *See* A.R.S. § 36-2850(9), (10). And, as a dual licensee, a non-profit marijuana dispensary "[m]ay operate on a for-profit basis if the dual licensee promptly notifies the department and department of revenue and takes any actions necessary to enable its for-profit operation, including converting its corporate form and amending its organizational and operating documents." A.R.S. § 36-2858(D).

**¶36** Rule 60 allows the superior court to set aside a judgment when "applying it prospectively is no longer equitable," Ariz. R. Civ. P. 60(b)(5), or for "any other reason justifying relief," Ariz. R. Civ. P. 60(b)(6). Rules 60(b)(5) and (6) have been used "liberally in reopening otherwise final court orders where there has been a change in the law affecting substantial

rights of a litigant." *Edsall v. Superior Court*, 143 Ariz. 240, 243 (1984). However, in deciding whether Rule 60 relief is warranted, the superior court must consider the "totality of facts and circumstances," and, therefore, is afforded "extensive discretion" in deciding whether relief is appropriate. *Gonzalez v. Nguyen*, 243 Ariz. 531, 533, 534, ¶¶ 8, 11 (2018); *Aloia v. Gore*, 252 Ariz. 548, 551, ¶ 11 (App. 2022) (noting "[a] trial court enjoys broad discretion whether to grant relief from a judgment or order under Rule 60(b)").

¶37     The allegations regarding Alex's conduct, as well as Demitri's resignation from the Board, occurred nearly five years before the passage of Proposition 207.  The new law does not require medical marijuana dispensaries to operate as for-profit entities.  *See* A.R.S. § 36-2858(D).  And since the law passed, NPPC applied for and received a recreational marijuana license but has continued to operate as a non-profit corporation and, according to Alex, has no intention of converting to a for-profit entity.  Further, to convert, NPPC would have to adhere to the requirements set forth in A.R.S. § 36-2858(D) and the Arizona Entity Restructuring Act.  *See* A.R.S. §§ 29-2401, -2102(17)(a).  Therefore, we agree with the superior court that the passage of Proposition 207 in 2020 did "not affect the value of Demitri's board seat" or create a property interest in a Board seat in 2015 and did not alter the parties' substantive rights such that Rule 60 relief would be required.  *See Aloia*, 248 Ariz. at 253, ¶ 22 (finding the superior court erred in granting relief under Rule 60(b) when parties' circumstances not "extraordinary").

## IV.     Attorney Fees & Costs.

¶38     Demitri argues that the superior court improperly awarded attorney fees as it "failed to address any of the relevant factors it should have considered when determining if attorneys' fees were proper" and "made zero effort to determine whether the fees requested were reasonable."  And Odelma argues that NPPC "cannot be considered the 'successful' party as to its cross-claim" and the superior court acted inequitably in awarding fees jointly and severally because of her minimal involvement in the suit.  Because we remand this case for further proceedings, we vacate the attorney fee award and do not address the merits of these arguments.

¶39     The parties also all request an award of fees and costs on appeal pursuant to A.R.S. § 12-341 and -341.01.  In our discretion, we deny the requests for fees and, because neither party substantially prevailed, we decline to award costs.

14

**CONCLUSION**

¶40  For the foregoing reasons, we affirm in part, vacate in part, and remand to the superior court for further proceedings consistent with this decision.

